[No. 22919-6-II.   Division Two.   November 20, 1998.]

TODD M. HAMEL, *Appellant*, v. THE EMPLOYMENT SECURITY
DEPARTMENT, *Respondent*.

142

*William B. Knowles* and *Matthew J. Bean*, for appellant. *Christine O. Gregoire, Attorney General*, and *Pat L. DeMarco, Assistant*, for respondent.

SEINFELD, J. — The Employment Security Department denied Todd Hamel unemployment compensation benefits after it found that his employer, Red Robin, had terminated him for "misconduct." We hold that evidence of warnings followed by a repeated incident of the prohibited conduct is insufficient by itself to establish "misconduct." But evidence that Hamel intentionally engaged in conduct that he knew or should have known was harmful to his employer's interest is sufficient to prove "willful disregard of [the] employer's interest," as the Employment Security Act defines "misconduct." Thus, we affirm.

## FACTS

Red Robin employed Hamel as a waiter from October 1993 until it fired him in May 1995. During Hamel's employment, he was familiar with Red Robin's strict written policy prohibiting sexual harassment.

Red Robin management concluded that Hamel had violated that policy based upon three incidents where Hamel made "inappropriate" comments either to co-workers or customers. Following the first incident in August 1994, a Red Robin manager warned Hamel in writing that it was unacceptable to address female co-workers

as "hon" or "sweetheart." The written warning informed Hamel that he would be terminated if this behavior continued. Management received no further complaints of this behavior.

The second incident occurred in March 1995 while Hamel was working at the food service bar with two co-workers who were dating each other. The female co-worker told the male co-worker that she was going to "tie him down and pluck his eyebrows" while he was asleep. Hamel then said, "Well, she can't do that if you buck her off." Although Hamel could see that his remark offended the female co-worker and apologized for it, she nonetheless complained to a manager who gave Hamel a second written reprimand. The reprimand indicated that one more complaint of this nature would result in Hamel's immediate termination.

The third incident occurred in May 1995 when Hamel waited on a young woman who was with two girls approximately 12 or 13 years old. Hamel asked the young woman if she and either of the younger girls were related. The young woman responded that she was their softball coach. At this point, one of the younger girls pulled up her jacket and thrust out her chest to show the team emblem on her shirt. When the coach scolded the younger girl for her behavior, Hamel said, "Well, that's okay, it's probably hormones that go up and down."

Believing that his comment may have offended the coach, Hamel walked away. After the coach and girls finished their meal, Hamel apologized to them. But the coach complained to Hamel's supervisor.

Based upon these three incidents, the manager fired Hamel. Hamel then applied for unemployment compensation benefits.

The Employment Security Department made an initial determination that Hamel was ineligible for benefits because he had engaged in work-related misconduct. An Administrative Law Judge (ALJ) affirmed the Department's initial determination and the Department Commissioner affirmed the ALJ's decision. The Commissioner found that

Hamel's conduct violated Red Robin's policy prohibiting sexual harassment and that Red Robin had warned Hamel about similar behavior.

The superior court also affirmed after first remanding to the Department for further factual findings. Specifically, the superior court instructed the Commissioner on remand to determine if, by a preponderance of the evidence, "the claimant (1) intended to make the statements at issue, and (2) a reasonable person would understand that the statements would be harmful to the employer's interest." On remand, the Commissioner found substantial evidence in the record to support both propositions. Hamel now appeals to this court.

## DISCUSSION

■ In reviewing administrative action, we apply the Administrative Procedure Act standards directly to the record before the agency. *Valentine v. Department of Licensing*, 77 Wn. App. 838, 843-44, 894 P.2d 1352 (1995) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)). An agency head reviewing an adjudicative decision of an administrative hearings officer may substitute his or her findings for those made by the hearings officer. RCW 34.05.464. Thus, to the extent the Department Commissioner modified the ALJ's findings, we review the Commissioner's findings. *Valentine*, 77 Wn. App. at 844 (citing *Tapper*, 122 Wn.2d at 406).

■ We grant relief from an agency order only if it is based on an erroneous interpretation or application of the law or if the order is not supported "by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(d), (e). "Substantial evidence is 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" *Heinmiller v. Department of Health*, 127 Wn.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995) (quoting *Nghiem v. State*, 73 Wn. App. 405, 412, 869 P.2d 1086 (1994)).

■ ■ On issues of law, we may substitute our judgment

for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers. *Valentine*, 77 Wn. App. at 844 (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982)). On mixed questions of law and fact, we determine the law independently and then apply the law to the facts as found by the agency. *Valentine*, 77 Wn. App. at 845 (citing *Black Real Estate Co. v. Department of Labor & Indus.*, 70 Wn. App. 482, 487, 854 P.2d 46 (1993)).

## I. DISQUALIFYING MISCONDUCT

■■ Under the Employment Security Act, an individual who is discharged "for misconduct connected with his or her work" is disqualified from benefits. RCW 50.20.060. In 1993, the Legislature enacted RCW 50.04.293, which defines "misconduct" as follows:

> "Misconduct" means an employee's act or failure to act in willful disregard of his or her employer's interest where the effect of the employee's act or failure to act is to harm the employer's business.

In enacting RCW 50.04.293, the Legislature intended that the Department not deny benefits unless the employee's conduct was "both willful ('willful disregard of [the] employer's interest') and harmful to the employer ('effect . . . is to harm the employer's business.')" *Dermond v. Employment Sec. Dep't*, 89 Wn. App. 128, 133, 947 P.2d 1271 (1997) (quoting *Galvin v. Employment Sec. Dep't*, 87 Wn. App. 634, 641-42, 942 P.2d 1040 (1997), *review denied*, 134 Wn.2d 1004 (1998)).

Hamel does not dispute the finding that his inappropriate comments caused actual harm to Red Robin. Rather, he contends that the statutory definition of misconduct in RCW 50.04.293 requires evidence that he *intended to harm* his employer's interests. He further argues that the Legislature's enactment of RCW 50.04.293 overruled the misconduct standard established by the Supreme Court in *Macey v. Employment Sec. Dep't*, 110 Wn.2d 308, 752 P.2d 372 (1988).

The *Macey* standard, as explained in *Tapper*, 122 Wn.2d 397, has four elements. They are:

(1) The rule which is allegedly violated must be reasonable under the circumstances of the employment; (2) The violative conduct of the employee must be connected with his or her work; (3) The conduct of the employee must violate the rule; and (4) *The violations must be intentional, grossly negligent, or continue to take place after notice or warnings.* That is, the behavior cannot be characterized as mere incompetence, inefficiency, erroneous judgment, or ordinary negligence. *See Macey*, 110 Wn.2d at 318-19.

*Tapper*, 122 Wn.2d at 409 (emphasis added).

The fourth element—the nature of the violations—is at issue here. The Department contends that it satisfied the misconduct standard by producing evidence that Hamel deliberately did or said something that lacked due respect or regard for the employer's interests and engaged in this conduct after Red Robin gave him notice and warnings.

In the workers' compensation context, courts have concluded that the term "willful misconduct" means more than mere negligence. It "contemplates the intentional doing of something with knowledge that it is likely to result in serious injuries, or with reckless disregard of its probable consequences." BLACK'S LAW DICTIONARY 1600 (6th ed. 1990) (citing *Wilson v. Commonwealth Unemployment Compensation Bd.*, 15 Pa. Commw. 314, 325 A.2d 500, 501 (1974)).

Thus, misconduct involves more than "mere incompetence, inefficiency, erroneous judgment, or ordinary negligence." *Tapper*, 122 Wn.2d at 409 (citing *Macey*, 110 Wn.2d at 318-19). But we disagree with Hamel that there must be an "intent to harm." Because the word "willful" modifies the word "disregard," the employee must have voluntarily disregarded the employer's interest. His specific motivations for doing so, however, are not relevant. Consequently, an employee acts with willful disregard when he (1) is aware of his employer's interest; (2) knows or should have known that certain conduct jeopardizes that

interest; but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences.

Here, Hamel was aware of Red Robin's interest in preventing sexual harassment. But he contends that he did not know that his conduct was inconsistent with that interest. The evidence is susceptible of multiple interpretations, but the Commissioner, to whom we defer, found that "a reasonable person would understand that what [Hamel] said would harm the employer's interest." Applying the objective, "should have known" standard, we assume that Hamel knew what a "reasonable person" would have known. Finally, the Commissioner also found, and Hamel does not dispute, that Hamel intended to make the statement at issue. Thus, the evidence here that Hamel intentionally made comments that he should have known could harm his employer is sufficient to show that his actions rose above simple negligence.

We note that if the Commissioner had relied solely upon the fact that Red Robin had given Hamel repeated warnings, this would not satisfy the willful misconduct standard. To hold otherwise would allow the Department to avoid the "willful disregard" requirement in the case of an employee who acted incompetently or negligently after warnings against repeating such behavior.

Further, the decision in *Tapper* is not controlling here. Although the fourth part of the *Tapper* test does mention conduct after warnings, the *Tapper* court did not deal with RCW 50.04.293, which was newly enacted at the time and not applicable to the employment separation at issue in *Tapper*. Thus, the *Tapper* court did not consider the effect of RCW 50.04.293 on then existing misconduct jurisprudence. 122 Wn.2d at 408 n.7.

For that reason, we disagree with appellate decisions that have adopted the "warning" part of the *Tapper* test as the standard for deciding whether an employee's conduct is in "willful disregard of his or her employer's interest." RCW 50.04.293. *See Dermond*, 89 Wn. App. at 133; *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 201, 940 P.2d

269 (1997); *Galvin*, 87 Wn. App. at 643-44. Of course, an employer's previous warnings to avoid certain behavior may provide strong evidence of the employee's knowledge that the conduct is inconsistent with the employer's interest.

Because the Commissioner's findings were sufficient to conclude that Hamel's conduct was grossly negligent and satisfied the statutory definition of misconduct, we affirm.

## II. ATTORNEY FEES

Hamel contends that, pursuant to RCW 50.32.160, he is entitled to an attorney fee award because the superior court remanded the case to the Employment Security Department for further factual findings. *Terry v. Employment Sec. Dep't*, 82 Wn. App. 745, 753, 919 P.2d 111 (1996). The Department argues that Hamel is not entitled to fees unless a reviewing court reverses or modifies the Commissioner's decision.

A claimant for unemployment benefits is entitled to reasonable attorney fees and costs "if the decision of the commissioner shall be reversed or modified" on appeal to the courts. RCW 50.32.160. Here, the superior court did not reverse or modify the decision of the Commissioner when it remanded the decision for additional factual findings. Further, the superior court affirmed the Commissioner's decision on remand.

■ Contrary to Hamel's assertion, *Terry* does not stand for the proposition that a superior court's remand for additional factual findings is equivalent to a reversal or modification. In *Terry*, the court found that the commissioner erred by concluding that the decision to retire was automatically a personal decision and, thus, did not constitute good cause to quit. 82 Wn. App. at 750. Because the court modified the Commissioner's ruling, the claimant was entitled to fees. Here, unlike in *Terry*, the superior court did not modify the Commissioner's ruling. Thus, Hamel is not entitled to attorney fees. RCW 50.32.160.

Affirmed.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 137 Wn.2d 1036 (1999).