193 P.3d 1102 (2008)
STATE of Washington, DEPARTMENT OF ECOLOGY, Respondent/Cross-Appellant,
v.
Herm DOUMA; Mike Douma; MJD Farms LLC; Richard M. Stephens; and Pollution Control Hearings Board, Appellants/Cross-Respondent.
No. 35864-6-II.
Court of Appeals of Washington, Division 2.
October 14, 2008.
*1103 Bruce L. Turcott, Office of The Atty. General, Olympia, WA, for Respondent.
Richard M. Stephens, Groen Stephens & Klinge LLP, Bellevue, WA, for Appellant/Cross-Respondent.
Ronald L. Lavigne Jr., Atty. Gen Ofc/Ecology Division, Olympia, WA, for Respondent/Cross-Appellant.

OPINION PUBLISHED IN PART
PENOYAR, A.C.J.
¶ 1 During the winter of 1998-99, the Doumas pumped dairy waste into an unlined trench on land they leased from the State. Pursuant to RCW 90.48.144, the Department of Ecology (Ecology) assessed a $53,000 penalty against the Doumas for discharging pollutants into Washington State waters. The Doumas appealed to the Pollution Control Hearings Board (PCHB), which reduced and *1104 partially suspended the penalty. Both Ecology and the Doumas petitioned for review in Thurston County Superior Court, which affirmed the PCHB's decision in its entirety. The Doumas argue that (1) the PCHB's decision was based on an error of law, and (2) the PCHB's decision regarding the penalty was arbitrary and capricious. Ecology argues that (1) the PCHB erred in suspending a portion of the penalty's gravity component, and (2) the PCHB erred in reducing the penalty's economic benefit component. The PCHB is a named party to this appeal, but does not advocate on the merits of the action. We affirm the PCHB's conclusion that a violation occurred and its suspension of a portion of the gravity component of the penalty, but remand for further findings regarding its reduction of the economic benefit portion of the penalty.

FACTS
¶ 2 The Doumas operate a dairy and beef cattle ranch in Whatcom County, Washington. Waste from dairy cows is collected and stored in manure lagoons until the Doumas apply it to field crops during the growing season. During the end of 1998 and the beginning of 1999, the area surrounding the Doumas' dairy received higher than normal levels of precipitation. This caused the Doumas' manure lagoons to fill more quickly than normal.[1] The Doumas felt that the manure lagoons might overflow, causing dairy waste to enter nearby surface waters.[2]
¶ 3 On February 25, 1999, the Doumas hired an excavation company to construct an unlined trench on wooded land adjacent to the Doumas' dairy,[3] which the Washington State Department of Natural Resources (DNR) managed and leased to the Doumas.[4] The Doumas' lease with DNR did not authorize use of the wooded parcel. Furthermore, the lease both prohibited the storage of harmful substances on the wooded parcel and required immediate notification to the State of any spill or release of a harmful substance that affected the leased land. The Doumas' excavation contractor constructed a rectangular trench approximately 550 feet long. The trench varied in width between five and ten feet wide, and was three to six feet deep. After constructing the trench, the Doumas pumped approximately 500,000 gallons of dairy waste from the manure lagoons into the trench, a volume roughly equal to ten days of dairy waste production at the Doumas' dairy. The Doumas did not contact Ecology before or after constructing and filling the trench.
¶ 4 In late April 1999, an anonymous third party informed DNR of the manure trench and DNR initiated an inspection. On May 3, 1999, DNR contacted Ecology. Ecology inspectors Mark Kaufman and Andrew Craig inspected the site on May 5, 1999. With his boot, Craig dug a hole approximately six to twelve inches deep near the trench; the hole gradually filled with water. Based on this, Craig concluded that the water table was at the level of the dairy waste in the trench, and that the dairy waste came in contact with groundwater. Consistent with orders from Ecology, the Doumas had the dairy waste pumped out of the trench and applied to nearby fields on May 7 and 8, 1999.
¶ 5 On May 21, 1999, Ecology issued a notice of violation to the Doumas. On June 21, the Doumas' attorney responded in a *1105 letter explaining the circumstances of the incident. On August 20,1999, Ecology issued a notice of penalty for $53,000 for discharging pollutants into State waters without a discharge permit.[5] On September 9, 1999, the Doumas submitted an application for relief from the penalty. Ecology affirmed the $53,000 penalty in a notice of disposition dated November 29, 1999.
¶ 6 The Doumas appealed to the PCHB.[6] The PCHB initially dismissed the appeal as untimely. The Doumas then appealed the dismissal to Whatcom County Superior Court, arguing that Ecology violated their procedural due process rights when it failed to serve their attorney with a copy of the decision on their application for relief from the penalty. The Whatcom County Superior Court reversed the dismissal and remanded the matter to the PCHB for a hearing on the merits.
¶ 7 On December 20, 2004, the PCHB held a hearing on the merits and on March 30, 2005, it issued its findings of fact, conclusions of law, and order. In its decision, the PCHB stated:
There is no dispute that some amount of dairy waste seeped into groundwater from the trench, and that groundwater more likely than not entered the trench. Therefore, the actions at the Doumas' dairy constituted a discharge of pollutants into waters of the state under Chapter 90.48 RCW.
Clerk's Papers (CP) at 174-75. The $53,000 penalty Ecology assessed had two components. The gravity portion of the penalty totaled $40,000. The economic benefit portion of the penalty totaled $13,000.[7] Based on testimony regarding the costs of having the dairy waste pumped and removed from the Doumas' dairy, the PCHB concluded that the $13,000 economic benefit calculation was approximately twice as high as it should have been, and it reduced the economic benefit component of the penalty to $6,500. The PCHB also suspended $10,000 of the $40,000 gravity component of the penalty on condition that the Doumas obtain technical assistance to review their dairy nutrient management practices and implement any recommendations and abstain from committing any water quality violations for a two-year period from the order date.
¶ 8 Ecology petitioned for review in Thurston County Superior Court. The Doumas petitioned for review in Whatcom County Superior Court. The two petitions were consolidated in Thurston County Superior Court. The superior court affirmed the PCHB's decision in its entirety. This appeal follows.

ANALYSIS
¶ 9 Our state legislature has acted to prevent water pollution: "It is declared to be the public policy of the state of Washington to maintain the highest possible standards to insure the purity of all waters of the state... to prevent and control the pollution of the waters of the state of Washington ..." RCW 90.48.010. To support this public policy, the legislature has outlawed the discharge of pollution into State waters:
It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters according *1106 to the determination of the department, as provided for in this chapter.
RCW 90.48.080. This case involves the application of this public policy of preventing water pollution to the actions of the Doumas as dairy farmers.
¶ 10 The legislature has also determined:
[T]here is a need to establish a clear and understandable process that provides for the proper and effective management of dairy nutrients that affect the quality of surface or ground waters in the state of Washington. The legislature finds that there is a need for a program that will provide a stable and predictable business climate upon which dairy farms may base future investment decisions.
RCW 90.64.005. In fact, an entire RCW chapter is devoted to the treatment of dairy farm nutrients: chapter 90.64 RCW. We must determine whether chapters 90.64 and 90.48 RCW have been correctly applied to the Doumas' actions.
RCW 90.48.080 prohibits the discharge of pollutants into State waters. A dairy that is determined to be a significant contributor of pollution based on actual water quality tests, photographs, or other pertinent information is subject to the provisions of chapters 90.64 and 90.48 RCW, including civil penalties issued under RCW 90.48.144. See RCW 90.64.030(6). Therefore, a dairy may be subject to the general enforcement provisions of RCW 90.48.080 if it is determined to be a significant contributor of pollution under chapter 90.64 RCW. Thus, our task is to carefully review the law, the record, and the parties' arguments to determine if the record supports the finding that the Doumas discharged pollution into State waters and whether the conditions that allow a chapter 90.48 RCW enforcement action to proceed against a dairy were established.

I. STANDARD AND SCOPE OF REVIEW
¶ 12 "In reviewing an administrative action, [this] court sits in the same position as the superior court, applying the standards of the WAPA [Washington Administrative Procedure Act] directly to the record before the agency." Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). The WAPA allows a reviewing court to reverse an administrative decision when: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary and capricious. RCW 34.05.570(3). "Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." Heinmiller v. Dep't of Health, 127 Wash.2d 595, 609, 903 P.2d 433 (1995) (quoting Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 695, 658 P.2d 648 (1983)).
¶ 13 We review questions of law de novo but accord substantial weight to the agency's interpretation of the statutes it administers. Superior Asphalt and Concrete Co. v. Dep't of Labor & Indus., 112 Wash. App. 291, 296, 49 P.3d 135 (2002) (citing Everett Concrete Prods., Inc. v. Dep't of Labor & Indus., 109 Wash.2d 819, 823, 748 P.2d 1112 (1988)). We review the PCHB's findings of fact for substantial evidence in light of the whole record. RCW 34.05.570(3)(e). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth or correctness of the matter. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 553, 14 P.3d 133 (2000). On mixed questions of law and fact, we independently determine the law, then apply it to the facts as found by the agency. Hamel v. Employment Sec. Dep't, 93 Wash.App. 140, 145, 966 P.2d 1282 (1998).
¶ 14 The Doumas argue that the PCHB's decision erroneously applied and interpreted the law, was not supported by substantial evidence, and was arbitrary and capricious. Ecology argues that we should defer to its interpretation of chapter 90.48 RCW[8] and *1107 that the PCHB cannot reduce or add new conditions to a penalty Ecology established unless the PCHB concludes that Ecology's penalty determination is incorrect in a particular respect. Ecology contends that the PCHB's decision to reduce and suspend portions of the penalty is based on an erroneous interpretation and application of the law and is not based on substantial evidence.
¶ 15 In assessing these arguments, we apply the WAPA standards directly to the administrative record before the PCHB.

II. CHAPTER 90.48 RCW VIOLATION

A. RCW 90.64.030(6)
¶ 16 The Doumas argue that Ecology bore the burden of proving by a preponderance of the evidence that the violation occurred and the penalty was reasonable under WAC 371-08-485.[9] They argue that the PCHB wrongfully concluded that Ecology met its burden of proving that the Doumas violated chapter 90.48 RCW. The Doumas contend that the legislature has determined that dairies shall be treated differently than other entities and that the Doumas cannot be subject to chapter 90.48 RCW enforcement provisions without a finding that it was a "significant contributor of pollution" under RCW 90.64.030(6). Ecology responds that RCW 90.64.030(6) does not shield the Doumas from enforcement under RCW 90.48.080. Ecology asks us to "deny the Doumas' invitation to rewrite chapter 90.64 RCW to provide them with an enforcement shield for their deliberate and intentional violations of this state's environmental laws." Resp't/Cross-Appellant's Br. at 19.[10] The law lies between the parties' positions.
¶ 17 The PCHB concluded that chapter 90.64 RCW does not establish a process for making a formal determination that a dairy is a "significant contributor of pollution" as a condition precedent to instituting an enforcement action. CP at 176. Rather, it noted, "[T]his phrase is consistent with the statutory purpose of the [Dairy Nutrient Management Act] to provide technical and compliance assistance, while retaining enforcement authority when necessary to address serious violations." CP at 176. Furthermore, the PCHB noted that chapter 90.64 RCW "does include a limitation on what discharges from dairies constitute a violation of [chapter 90.48 RCW]." CP at 176.
¶ 18 RCW 90.48.080 makes it unlawful for any person to allow any organic or inorganic matter that shall cause or tend to cause pollution[11] to seep into State waters. RCW 90.64.030(6) specifically provides that a dairy that is a significant contributor of pollution is subject to the enforcement provisions of chapter 90.48 RCW, including civil penalties levied under RCW 90.48.144.[12] Ecology argues, however, that RCW 90.64.120(1) provides that "nothing in this chapter shall affect the department of ecology's authority... to administer ... the provisions of [c]hapter 90.48 RCW." Resp't/Cross-Appellant's Br. at 11. Although the Doumas fail to respond to this argument, we find that it is misplaced. Ecology misinterprets the RCW 90.64.120(1)'s actual language. The subsection, in its entirety, states:

*1108 Nothing in this chapter shall affect the department of ecology's authority or responsibility to administer or enforce the national pollution discharge elimination system permits for operators of concentrated dairy animal feeding operations, where required by federal regulations or to administer the provisions of chapter 90.48 RCW.
RCW 90.64.120(1) (emphasis added). This statute highlights the interplay between federal and state laws as they relate to national pollution discharge elimination system (NPDES) permits. Under section 510 of the Clean Water Act of 1987, states were authorized to impose stricter requirements under these permits than federal law required. See Wash. PL100-4. Thus, RCW 90.64.120(1) allows Ecology to impose stricter standards under chapter 90.48 RCW when administering one of these permits. This interpretation of RCW 90.64.120(1) is consistent with the placement of the statute's single comma, which indicates that Ecology's ability to administer NPDES permits under both federal and state law was not affected by chapter 90.64 RCW. It is clear that the phrase "where required by federal regulations or to administer the provisions of chapter 90.48 RCW" modifies the language that appears before the comma, and does not exist independently of this language. RCW 90.64.120(1).
¶ 19 RCW 90.64.120(1) does not, as Ecology argues, operate to shield chapter 90.48 RCW from the subsequently enacted RCW 90.64.030(6). Chapter 90.64 RCW, which specifically addresses dairies, was intended to balance the need for clean water with the need for dairies. If Ecology were permitted to bring an enforcement action against a dairy without first establishing that it was a significant contributor of pollution under RCW 90.64.030(6), then the statute which establishes a separate standard by which a dairy is assessed for potential water pollution violationswould be rendered meaningless. RCW 90.64.030(6), then, may provide a potential defense for a dairy charged with violating chapter 90.48 RCW. In other words, a dairy that is not determined to be a significant contributor of pollution is not subject to chapter 90.48 RCW penalties. In the unpublished part of this opinion, we will examine the evidence to determine if it supports a finding that the Doumas were a significant contributor of pollution in this case.
¶ 20 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON and HUNT, JJ.
NOTES
[1] The Doumas had four interlocking manure lagoons and a fifth lagoon separated from the other four during this time. With the exception of the winter of 1998-99, the Doumas' five lagoons had never been full.
[2] During the spring of 1999, other dairies in the area contacted Ecology or the Natural Resource Conservation Service regarding possible manure lagoon overflows due to high precipitation. The Doumas did not contact Ecology regarding any potential emergency or possible overflow of the manure lagoons. Mike Douma testified that he did not contact Ecology because the Doumas and Ecology had a very adversarial relationship.
[3] The Doumas contend that they chose this site because it was the only land in the area not saturated with water at the time. The notice of violation stated that the Doumas' placement of the trench on the wooded parcel was "an admitted attempt to conceal the illegal manure storage from aerial observation by the [EPA] and [Ecology]..." Ex. R-8. The PCHB found it more likely than not that the Doumas did not make this admission.
[4] The lease became effective on August 16, 1996 and expired on December 31, 2005.
[5] The notice of penalty cited violations of RCW 90.48.080, RCW 90.48.160, RCW 90.48.144, and WAC 173-200-040. RCW 90.46.160 makes it unlawful for any person conducting a commercial or industrial operation of any type to dispose of solid or liquid waste material into waters of the state without obtaining a waste discharge permit. WAC 173-200-040 sets forth criteria in order to establish the maximum contaminant concentrations in the state's groundwater. We discuss RCW 90.48.080 and RCW 90.48.144 below.
[6] The PCHB submitted a brief addressing the scope of its authority. The PCHB is "concerned that the Court preserve the appropriate standard of review for the PCHB to apply in adjudication, but [][it] takes no position on the merits of this case." PCHB Br. at 1.
[7] The economic benefit portion of a penalty is calculated to recover any economic benefit the violator may have gained as a result of the violation.
[8] In 1945, the legislature passed the Water Pollution Control Act. It is currently codified at chapter 90.48 RCW.
[9] "The board shall make findings of fact based on the preponderance of the evidence unless otherwise required by law ... The issuing agency shall have the initial burden of proof in cases involving penalties or regulatory orders. In other cases, the appealing party shall have the initial burden of proof." WAC 371-08-485.
[10] The PCHB agrees with Ecology on this point: "In the context of reviewing the interpretation of law, both the PCHB and then the courts should give appropriate consideration to Ecology's interpretation of a statute that it is charged with implementing." PCHB Br. at 8.
[11] Pollution "shall be construed to mean such contamination, or other alteration of the physical, chemical or biological properties, of any waters of the state, including change in temperature, taste, color, turbidity, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substance into any waters of the state as will or is likely to create a nuisance or render such waters harmful...." RCW 90.48.020.
[12] RCW 90.48.144 governs the issuance of civil penalties for violations of water pollution laws. "The penalty amount shall be set in consideration of the previous history of the violator and the severity of the violation's impact on public health and/or the environment in addition to other relevant factors." RCW 90.48.144(3).