# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KATHERINE CANNING, )
)     No. 70163-1-I
Respondent, )
)     DIVISION ONE
v. )
)     UNPUBLISHED OPINION
WASHINGTON STATE )
DEPARTMENT OF EMPLOYMENT )
SECURITY, )
)
Appellant. )     FILED: April 14, 2014

GROSSE, J.P.T.[1] — An employee who violates an employer's drug free workplace policy commits misconduct disqualifying the employee from unemployment benefits. Here, an employee brought marijuana-laced candy to the workplace. This was in direct contravention of the employer's written policy and as such constituted misconduct. It is immaterial that the employee brought the drugs in for someone who had a medical marijuana prescription. We reverse the superior court's decision and affirm the commissioner's decision denying unemployment benefits.

## FACTS

Katherine Canning worked as a meat cutter for Puget Sound Consumer Co-Op (PCC) from July 27, 2011 through March 3, 2012. Canning was suspended by the store director for bringing candy laced with marijuana to the store. That suspension was converted to a termination for violating the company's drug and alcohol policy.

---

[1] Judge C. Kenneth Grosse was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

Shortly before Canning's dismissal, she had a conversation with her co-worker, Shawn, and the then acting meat manager, Jeffrey. Shawn was discussing with supervisor Jeffrey, the fact that he had received a prescription for medical marijuana. Canning interjected that she had made candy containing marijuana and offered to bring it to Shawn. Canning testified that she told the manager and Shawn that she used the marijuana-laced candy to resolve her anxiety and that it aided her sleep. She offered to bring candy into the workplace for Shawn. Canning testified that "nobody at the time, including the meat manager or Shawn, said, "No, don't do that. That's against the drug and alcohol policy."

Canning brought the "candy" to the workplace. She left the candy in her car until the end of her shift. Canning's shift ended one hour before Shawn's. At the end of her shift, she went to her car to retrieve the candy and gave it to Shawn in the workplace. When Canning returned to work her regularly scheduled shift, she was sent home, and then was fired the next day for violating the company's drug and alcohol policy.

Following her discharge, Canning applied to the Washington State Employment Security Department (Department) for unemployment benefits. On March 20, 2012, the Department issued a Determination Notice denying her request for benefits because she was fired for work misconduct and therefore did not qualify for benefits. The Department concluded that Canning's bringing the marijuana for someone who claimed to have a medical prescription was an act of misconduct because she failed to comply with a reasonable rule or direction of her employer.

Canning, pro se, appealed this determination. On April 30, 2012, after a hearing, the administrative law judge (ALJ) set aside the Department's determination. The ALJ's decision concluded that Canning did not commit misconduct, but an error of judgment, and therefore was not disqualified to receive benefits. In conclusion of law 5, the ALJ concluded that Canning was not discharged due to willful or wanton disregard of the employer's interests and that, because Canning "did not intend to harm the employer and thought it was okay because the co-worker had a prescription," she was not disqualified for unemployment benefits.

On May 7, 2012, PCC petitioned the commissioner of the Department for review of the ALJ's decision. The commissioner issued an order overturning the ALJ's decision. The commissioner adopted the ALJ's findings of fact, except for conclusion of law 5 and entered an additional finding, noting that PCC had a drug and alcohol free workplace policy in its employee handbook that Canning was given at orientation.[2]

Canning appealed the commissioner's order to the superior court and the superior court reversed the commissioner, finding that Canning's conduct amounted to a good faith error in judgment and thus, Canning was not disqualified from receiving benefits. The Department now appeals the superior court's order.

## ANALYSIS

On an appeal of a final decision by the Employment Security Department commissioner, this court reviews the decision of the commissioner, rather than the

---

[2] The handbook provided that "PCC staff are not to have alcohol, or illegal or illicit drugs in their possession while on the premises. . . . Violation of this policy will result in termination of employment."

3

underlying decision of the ALJ, except to the extent that the commissioner adopts the ALJ's findings of fact.[3] This court considers a commissioner's decision to be prima facie correct and the burden of demonstrating the invalidity of the agency action is on the party asserting the invalidity.[4] This court may reverse the commissioner's decision if it is based on an error of law, substantial evidence does not support the decision, or it was arbitrary or capricious.[5] Questions of law are reviewed de novo, with substantial weight given to the agency's interpretation of the statutes it administers.[6] Findings of fact are reviewed for substantial evidence in light of the whole record.[7]

The Employment Security Act exists to provide compensation to individuals who are "involuntar[ily] . . . unemployed though no fault of their own."[8]  RCW 50.20.066(1) provides: "An individual shall be disqualified from benefits . . . [if] he or she has been discharged or suspended for misconduct connected with his or her work . . . ." The statute provides a non-exclusive list of conduct that constitutes misconduct. RCW 50.04.294 defines "misconduct" as follows:

> (1) "Misconduct" includes, but is not limited to, the following conduct by a claimant:
> (a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;
> (b) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

---

[3] Verizon N.W., Inc. v. Employment Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008); Griffith v. State, Dep't of Employ. Sec., 163 Wn. App. 1, 6, 259 P.3d 1111 (2011).
[4] RCW 34.05.570(1)(a); Kirby v. State, Dep't of Employ. Sec., No. 69807-9, 2014 WL 943099 *4 (Wash. Mar. 10, 2014).
[5] RCW 34.05.570(3)(d),(e),(i).
[6] Everett Concrete Prods, Inc. v. Dep't of Labor & Indus., 109 Wn.2d 819, 823, 748 P.2d 1112 (1988).
[7] RCW 34.05.570(3)(e); Smith v. Employment Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).
[8] RCW 50.01.010.

4

(c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or a fellow employee; or

(d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

In addition, certain types of conduct are defined as misconduct per se.[9] Among these are a "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."[10]

Canning does not dispute that PCC maintained a policy of no drugs in the workplace. Nor does she dispute that the rule was reasonable and that she was aware of the rule. Instead, she argues that she did not believe she was violating

---

[9] RCW 50.04.294(2) provides:

The following acts are considered misconduct because the acts signify a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee. These acts include, but are not limited to:

(a) Insubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer;

(b) Repeated inexcusable tardiness following warnings by the employer;

(c) Dishonesty related to employment, including but not limited to deliberate falsification of company records, theft, deliberate deception, or lying;

(d) Repeated and inexcusable absences, including absences for which the employee was able to give advance notice and failed to do so;

(e) Deliberate acts that are illegal, provoke violence or violation of laws, or violate the collective bargaining agreement. However, an employee who engages in lawful union activity may not be disqualified due to misconduct;

(f) <u>Violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule</u>; or

(g) Violations of law by the claimant while acting within the scope of employment that substantially affect the claimant's job performance or that substantially harm the employer's ability to do business.

(Emphasis added.)
[10] RCW 50.04.294(2)(f).

the rule and therefore her conduct was nothing more than a good faith error in judgment and excluded from misconduct under RCW 50.04.294(3).[11]

The commissioner adopted the ALJ's finding that Canning believed the co-worker's prescription made it legal, but concluded that it was not reasonable for Canning to believe the co-worker's prescription made it acceptable under the law and company policy for the co-worker to be in possession of the marijuana-laced candy.

Our appellate courts have held that an employee acts with willful disregard of an employer's interest when the employee "(1) is aware of his employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its consequences."[12] The fact that Canning acted out of compassion is immaterial. This is in accord with rules promulgated by the Department. WAC 192-150-205 describes "willful" as "intentional behavior done deliberately or knowingly, where you are aware that you are violating or disregarding the rights of your employer or a co-worker." The evidence was undisputed that Canning was aware of the company's zero tolerance for drugs in the workplace.

---

[11] RCW 50.04.294(3) excludes the following from the definition of "misconduct":
    (a) Inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity;
    (b) Inadvertence or ordinary negligence in isolated instances; or
    (c) Good faith errors in judgment or discretion.
[12] Hamel v. Employment Sec. Dep't, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998), rev. denied, 137 Wn.2d 1036, 980 P.2d 1283 (1999).

Violation of a reasonable policy of the employer is specifically defined in the statute as misconduct per se. The evidence in the record was sufficient to support the commissioner's conclusion that Canning committed misconduct because she violated a reasonable company rule of which she was aware. We reverse and remand to the superior court to reinstate the commissioner's decision. Because Canning is not the prevailing party, it is unnecessary to address her request for an award of attorney fees and costs.

WE CONCUR: