
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JEFF KIRBY, an individual and sole shareholder and founder of PUGET SOUND SECURITY PATROL, INC., a Washington corporation,

Appellant,

v.

STATE OF WASHINGTON, DEPARTMENT OF EMPLOYMENT SECURITY,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71708-1-I

DIVISION ONE

UNPUBLISHED

FILED: May 26, 2015

Cox, J. — Jeff Kirby and Puget Sound Security Patrol, Inc. (collectively "PSSP") appeal the superior court's order affirming the decision of the Commissioner of the Employment Security Department to award unemployment benefits to Robert Bolling, a former PSSP employee. The Commissioner's findings of fact are supported by substantial evidence. And the findings support the conclusions of law. There was no disqualifying misconduct to bar Bolling's receipt of unemployment benefits. We affirm.

The Commissioner's findings of fact establish the material facts. Bolling worked as a part-time, permanent, nonunion security guard for PSSP from June

2010 to August 2012. He worked the weekend graveyard shift at the facilities of PSSP's client.

Several incidents occurred during Bolling's employment. We describe them later in this opinion.

PSSP discharged Bolling in August 2012. Bolling applied for unemployment benefits. The Department denied his application based on PSSP's statement that it had discharged Bolling for insubordination. Bolling appealed. After a three day hearing, an administrative law judge (ALJ) concluded that Bolling was discharged for unsatisfactory conduct or an inability to perform his job but not "misconduct" that would disqualify him from benefits.

PSSP petitioned the Department's commissioner for review. The Commissioner adopted most of the ALJ's findings of fact and conclusions of law and affirmed. PSSP petitioned for reconsideration, which the Commissioner denied. PSSP appealed the Commissioner's decision to King County Superior Court. The superior court affirmed the Commissioner's decision.

PSSP appeals.

## SUPPLEMENTATION OF ADMINISTRATIVE RECORD

PSSP argues that a document, which was admitted below, was erroneously omitted from the administrative record. PSSP asks this court to supplement the record to include it. We grant this request.

Pursuant to RCW 34.05.566(7), this court may permit corrections or additions to the agency record. Here, PSSP seeks to supplement the record with a letter, which it asserts is from two of its client's employees. The record shows

2

that the ALJ admitted this letter into evidence as page three of Exhibit 6. Thus, the omission of this letter from the record appears to be an oversight. There being no objection from the Department, supplementation of the record is proper.

## UNEMPLOYMENT BENEFITS

PSSP argues that the Commissioner improperly awarded unemployment benefits. We disagree.

The Employment Security Act exists to provide compensation to individuals who are involuntarily unemployed "through no fault of their own."[1] An individual is disqualified from receiving unemployment benefits if he or she is discharged "for misconduct connected with his or her work."[2]

Judicial review of a decision made by the Commissioner of the Employment Security Department is governed by the Washington Administrative Procedure Act (WAPA).[3] This court sits in the same position as the superior court and applies the standards of the WAPA directly to the administrative record before the agency.[4] We review the Commissioner's decision, not the underlying decision of the ALJ.[5]

---

[1] RCW 50.01.010.

[2] RCW 50.20.066(1).

[3] Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[4] Id.

[5] Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

3

The Commissioner's decision is prima facie correct.[6] The party challenging the decision bears the burden of demonstrating its invalidity.[7] Relief from an agency decision is granted if the reviewing court determines that the Commissioner erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious.[8]

We review findings of fact to determine whether they are supported by substantial evidence.[9] Unchallenged findings are verities on appeal.[10] We review de novo questions of law.[11] We give substantial weight to the agency's interpretation of the statutes it administers.[12]

Whether a claimant engaged in misconduct is a mixed question of law and fact.[13] Accordingly, we determine the law independently and then apply the law to the facts as found by the agency.[14]

---

[6] RCW 50.32.150.

[7] Id.

[8] RCW 34.05.570(3)(d), (e), (i).

[9] Barker v. Emp't Sec. Dep't, 127 Wn. App. 588, 592, 112 P.3d 536 (2005).

[10] Fuller v. Emp't Sec. Dep't, 52 Wn. App. 603, 605, 762 P.2d 367 (1988).

[11] Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).

[12] Id.

[13] Tapper, 122 Wn.2d at 402.

[14] Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998).

*Findings of Fact*

PSSP assigns error to Finding of Fact no. 20, but fails to make any specific argument about this assignment of error. Nevertheless, we address whether substantial evidence supports this finding.

"'Substantial' evidence is evidence that would persuade a fair-minded person of the truth or correctness of the matter."[15] An appellate court views the evidence and reasonable inferences therefrom in the light most favorable to the party who prevailed at the administrative proceeding below.[16] An appellate court does not substitute its judgment for that of the agency regarding witness credibility or the weight of evidence.[17]

Finding of Fact no. 20 states:

> The claimant tended to give elaborate explanations for why what he had done was appropriate or justified, and intended to serve the best interests of the employer. He did not intend to cause harm, but his actions were seen as disruptive and possibly damaging to the employer's relations with the client.[18]

Bolling's testimony supports this finding of fact. Bolling testified about several incidents that occurred during his employment and explained how he thought his actions were appropriate. His testimony reveals that he was trying to serve the best interests of his employer and did not intend to cause harm.

---

[15] Smith, 155 Wn. App. at 32-33.

[16] William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996).

[17] Smith, 155 Wn. App. at 35.

[18] Administrative Record at 454.

The first incident occurred in September 2011. Bolling received a written warning for not filling out an incident report during the shift in which the incident occurred. Bolling's supervisor called him the next morning and asked him to come in and write the report. Bolling complied, but he did not have all of the information, so he wrote a supplemental report at home. Bolling thought PSSP was in a hurry to get the report, so he faxed it to PSSP's main office rather than to his supervisor. PSSP criticized Bolling for failing to follow the chain of command.

Bolling testified about this incident. He explained that he did not write an incident report immediately upon returning to his work site because he ran out of time at the end of his shift and because there is a rule that prohibits two security guards from being on duty at the same time.[19] He also testified that there was no requirement that the report be done immediately, rather, it had to be done quickly.[20] He "did the best [he] could" and "did it as quick as [he] could."[21] He was concerned about making sure the report was correct and free of mistakes.[22] Bolling submitted an additional report providing more detail.[23] He testified that he

---

[19] Id. at 253-54.

[20] Id. at 255.

[21] Id. at 255-56.

[22] Id. at 255-57.

[23] Id. at 255-56.

faxed it to PSSP headquarters rather than sending it to his supervisor because he had the impression "that the report had to be in headquarters right away."[24]

Another incident occurred in January 2012. While Bolling was on his way to work, he observed a vehicle that acted strangely when a police car went by. After he arrived at work, his supervisor told him about the murder of a Park Ranger and told him to be especially watchful during his shift. After learning this news, Bolling became concerned that the vehicle he had seen might have been involved. He called the client's manager for a description of the suspect. The description did not match, but Bolling told the client's manager about it and wrote an incident report on it. In the report, Bolling said that his supervisor was paranoid and had put him on high alert. The supervisor objected to these characterizations and asked Bolling to rewrite the report, which he did.

Bolling also testified about this incident. He testified that his supervisor told him to be on alert and watchful of everything.[25] Bolling said that he wrote an incident report because "when something like this happens, you have got to mention any details, any little facts. It could have been the killer. We didn't know at that moment."[26]

In another incident, Bolling looked in a cupboard belonging to the client for some rechargeable batteries. His supervisor told him he should not have done so. When Bolling saw the client's manager a few days later, he apologized. The

---

[24] Id. at 257.

[25] Id. at 194.

[26] Id. at 195.

manager did not know what he was talking about, so Bolling explained and asked if he needed to contact them before getting into the cabinet, to which the on-site supervisor said no.

Bolling testified about this as well. He explained that he believed he was following instructions from a supervisor.[27] He said that he did not "go around and do things [he] shouldn't have done."[28] Rather, he testified that his supervisor asked him to check the batteries and that when he told her he did not know where they were, she told him to "[g]o find them."[29]

The final incident occurred in August 2012. Bolling's supervisor told him that certain equipment of the client was offline for maintenance and repair. While making his rounds, Bolling saw that the equipment's start light was out, so he noted it on a maintenance log at the facility. When Bolling next came to work, his supervisor gave him a written warning for disregarding orders and writing up the equipment even though there was no need. Bolling disagreed with the warning and said he would take his objections to the supervisor's supervisors. Two days later, Bolling asked the client's head mechanic and electrician if it was okay for him to have logged the burned out bulb. They notified Bolling's supervisor of his inquiry. Bolling had previously sought a second opinion from the client, which the client's on-site manager referred to as "playing the mommy-daddy game."[30]

---

[27] Id. at 304.

[28] Id.

[29] Id.

[30] Id. at 453.

Bolling testified about this incident. He explained that he was specifically instructed not to test the alarms on the equipment when they were offline.[31] But when asked if he was instructed not to test the lights when the equipment was offline, Bolling testified that it was never discussed.[32] He stated:

> [I]t is not anything verbally or written down saying that I couldn't test that bulb the day I did it. And I did it as a matter of habit. It wasn't anything insubordinate or any—I was not instructed not to test the bulbs. . . .[33]

Bolling further testified that if the machine is down, and the test light is out, "it doesn't hurt to check it as you go by."[34] He explained that the "panel" on the client's equipment was still up and running and the lights could still be tested.[35] Bolling believed it "was the best thing to do because, as it turns out, the electrician saw—saw that it was burnt out. It was one less problem to worry about."[36]

In sum, Bolling's testimony supports Finding of Fact no. 20. The Commissioner adopted his testimony and apparently found him credible. This constitutes substantial evidence to support the finding.

---

[31] Id. at 247, 332, 334, 336.

[32] Id. at 246, 332, 334, 336-37.

[33] Id. at 247.

[34] Id. at 251.

[35] Id. at 251, 335-36.

[36] Id. at 251.

The remaining findings are verities, as they are unchallenged on appeal.[37] Accordingly, the question is whether the Commissioner's findings support the conclusions of law.

*Conclusions of Law*

PSSP argues that the Commissioner erroneously concluded that PSSP failed to prove misconduct under RCW 50.04.294. We disagree.

Under the WAPA, we review the Commissioner's legal conclusions for error of law.[38] We give substantial weight to the Commissioner's interpretation of "misconduct" as it is defined under the Employment Security Act because of the agency's special expertise.[39]

Claimants are disqualified from benefits if they are discharged for misconduct connected with their work.[40] "Misconduct" is defined by statute.[41]

RCW 50.04.294(1) provides a non-exhaustive list of "misconduct":

(a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;

(b) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

(c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or a fellow employee; or

---

[37] Fuller, 52 Wn. App. at 605.

[38] Verizon Nw., Inc., 164 Wn.2d at 915.

[39] Id.

[40] RCW 50.20.066(1).

[41] RCW 50.04.294.

(d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.

RCW 50.04.294(2) identifies several acts of per se misconduct. These acts are considered misconduct because they "signify a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee."[42] Among these is RCW 50.04.294(2)(a), which is "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer." Also among these is RCW 50.04.294(2)(f), which is a "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."

RCW 50.04.294(3) expressly defines what is excluded from "misconduct":

(a) Inefficiency, unsatisfactory conduct, or failure to perform well as the result of inability or incapacity;

(b) Inadvertence or ordinary negligence in isolated instances; or

(c) Good faith errors in judgment or discretion.

Here, the Commissioner concluded that Bolling did not commit disqualifying misconduct:

Based on the above findings and pursuant to the above referenced authority, [PSSP] has not met its burden of proof with respect to misconduct. While [PSSP's] frustration with [Bolling] is real and understandable, [Bolling's] actions do not exhibit the kind of willful or wanton disregard of the employer's interests that constitutes misconduct under the statute. This was not intentional behavior done deliberately or knowingly with the awareness that [Bolling] was violating or disregarding the rights of the employer. Nor was it malicious behavior showing extreme indifference to a risk, injury, or harm to another that is known or should have been

---

[42] RCW 50.04.294(2).

known. [Bolling's] acts here were at worst the kind of unsatisfactory conduct or inability to perform well that the statute states is not misconduct. Accordingly, [Bolling] is not subject to disqualification under RCW 50.20.066.[43]

This reflects two separate conclusions by the Commissioner.

First, the Commissioner concluded that Bolling's actions "do not exhibit the kind of willful or wanton disregard of the employer's interests that constitutes misconduct under the statute."[44] This conclusion tracks the statutory language of RCW 50.04.294(1)(a). The Commissioner concluded that Bolling's conduct "was not intentional behavior done deliberately or knowingly with the awareness that [Bolling] was violating or disregarding the rights of the employer."[45] The Commissioner also concluded that Bolling's conduct was not "malicious behavior showing extreme indifference to a risk, injury, or harm to another that is known or should have been known."[46]

This conclusion accurately reflects the Department's regulations. Under these regulations, "'Willful' means intentional behavior done deliberately or knowingly, where you are aware that you are violating or disregarding the rights of your employer or a co-worker."[47] "'Wanton' means malicious behavior

---

[43] Administrative Record at 456.

[44] Id.

[45] Id.

[46] Id.

[47] WAC 192-150-205(1).

12

showing extreme indifference to a risk, injury, or harm to another that is known or should have been known to you."[48]

As discussed earlier, in Finding of Fact no. 20, the Commissioner found that Bolling intended to serve the best interests of his employer and did not intend to cause harm. This supports the conclusion that Bolling's conduct was not willful, because he was not aware that he was disregarding the rights of his employer. It also supports the conclusion that Bolling's conduct was not wanton, because he did not act maliciously. Finally, it supports the conclusion that PSSP failed to show misconduct, because as this court recently stated in Kirby v. Department of Employment Security, a showing of misconduct "must be established by evidence that the employee was aware that he or she was disregarding the employer's rights."[49] In short, the Commissioner properly applied the law and determined that Bolling's conduct was not misconduct under RCW 50.04.294(1)(a).

Second, the Commissioner also concluded that Bolling's acts "were at worst the kind of unsatisfactory conduct or inability to perform well that the statute states is not misconduct."[50] This tracks the statutory language of RCW 50.04.294(3)(a), which excludes from misconduct "unsatisfactory conduct" or "failure to perform well as the result of inability or incapacity."

---

[48] WAC 192-150-205(2).

[49] Kirby v. Dep't of Emp't Sec., 179 Wn. App. 834, 847, 320 P.3d 123, review denied, 181 Wn.2d 1004 (2014).

[50] Administrative Record at 456.

In <u>The Markam Group Inc. v. Department of Employment Security</u>, Division Three concluded that a paralegal's conduct was not misconduct even though she committed a series of mistakes.[51] The court reasoned that she did not deliberately or knowingly fail to perform her job duties correctly, rather, she tried to perform to standards but was unsuccessful because she lacked the skills she needed.[52] Accordingly, the court concluded that the paralegal's conduct was expressly excluded from the statutory definition of misconduct and she was entitled to unemployment benefits.[53]

Here, like in <u>Markam</u>, Finding of Fact no. 20, together with the unchallenged findings of fact, support the conclusion that Bolling's conduct was excluded from "misconduct." The findings show that although Bolling may have made mistakes, such as making unnecessary notes in the maintenance log or looking in the client's cupboard for batteries, he believed that he was doing work correctly and following proper instructions. As in <u>Markam</u>, Bolling did not deliberately or knowingly perform his duties incorrectly. Rather, the record demonstrates that Bolling was unable to perform his job to his employer's standards due to poor judgment or a lack of skills. In short, the Commissioner properly concluded that Bolling's conduct constituted "unsatisfactory conduct" or the "inability to perform well" and did not constitute misconduct.

---

[51] 148 Wn. App. 555, 563-64, 200 P.3d 748 (2009).

[52] <u>Id.</u>

[53] <u>Id.</u> at 564.

14

We note that, in the order before us, the Commissioner did not expressly determine whether Bolling's conduct constituted misconduct under RCW 50.04.294(2)(a), despite arguments about this subsection before ALJ and the Commissioner.[54] PSSP argues that failing to consider this standard is reversible error. It is mistaken.

Under RCW 50.04.294(2)(a), "[i]nsubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer" constitutes per se misconduct. Here, there is no finding of insubordination. Likewise, there is no finding of "deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer." The absence of a finding on a matter generally connotes a finding against the proponent of that finding.[55] Thus, the underlying predicate to a conclusion about misconduct under this subsection is absent.

More importantly, the well-supported conclusion that the conduct of this employee was not misconduct under RCW 50.04.294(3)(a) is dispositive. If Bolling's conduct was statutorily excluded from the definition of misconduct under RCW 50.04.294(3)(a), the employer cannot establish misconduct under RCW 50.04.294(2)(a).

PSSP makes several arguments in opposition to the Commissioner's determinations. None are convincing.

---

[54] See Administrative Record at 345-47, 482-84.

[55] Stuewe v. Dep't of Revenue, 98 Wn. App. 947, 952, 991 P.2d 634 (2000).

15

PSSP first argues that the Commissioner used the wrong legal standard. Specifically, it asserts that the Commissioner "essentially require[ed] [PSSP] to prove that [Bolling] had a criminal mens rea: a specific intent to harm."[56] PSSP asserts that "[p]urposeful action against the employer's interest is all that is required."[57] But this is not a proper statement of the law.

To establish misconduct under RCW 50.04.294(1)(a), PSSP must show that Bolling's conduct was either "willful" or "wanton." Under the Department's regulations, both of those definitions require more than purposeful action.[58] While PSSP is correct that "subjective motivations and intent to harm the employer are irrelevant," this court recently made clear that a showing of misconduct "must be established by evidence that the employee was aware that he or she was disregarding the employer's rights."[59]

PSSP also relies on Griffith v. Department of Employment Security to support its assertion that purposeful conduct is all that is required.[60] In that case, an employee was discharged after making inappropriate comments to a

---

[56] Brief of Appellant at 16.

[57] Id. at 17.

[58] See WAC 192-150-205(1), (2).

[59] Kirby, 179 Wn. App. at 847.

[60] Brief of Appellant at 16 (citing Griffith v. Dep't of Emp. Sec., 163 Wn. App. 1, 259 P.3d 1111 (2011)).

customer.[61] Division Three concluded that the employee committed misconduct because "[h]e acted intentionally, if also mistakenly, and harmed his employer."[62]

But a close reading of that case reveals that reliance on Griffith is misplaced. The Griffith court heavily relied on Hamel v. Employment Security Department in concluding that the employee committed misconduct.[63] In Hamel, the employee was aware of his employer's policy against sexual harassment, had twice been reprimanded for remarks that violated the policy, and had been warned that another incident would lead to termination.[64] After a third incident, the employer discharged Hamel. The Hamel court concluded that the employee committed disqualifying misconduct because he was aware of the company's interest, a reasonable person should have known his behavior would harm the employer's interest, and he acted intentionally.[65]

The Griffith court stated that the facts of that case resembled Hamel.[66] The facts of Hamel were that the employee knew of his employer's interest and knew or should have known that his conduct jeopardized that interest.

---

[61] Griffith, 163 Wn. App. at 5.

[62] Id. at 11.

[63] Id. at 9-11 (citing Hamel, 93 Wn. App. 140).

[64] Hamel, 93 Wn. App. at 142-44.

[65] Id. at 147.

[66] Griffith, 163 Wn. App. at 10.

Here, in contrast, Finding of Fact no. 20 establishes that Bolling thought his actions were justified and intended to serve the best interests of PSSP. And there is no finding that Bolling should have known he was disregarding his employer's interests. This supports the conclusion that Bolling did not act with knowledge that he was violating or disregarding the rights of his employer. Thus, this case is distinguishable, on its facts, from Griffith and Hamel.

PSSP contrasts this case with Markam and argues that "[b]luring mistakes and lack of skill with insubordination and refusing to follow reasonable rules is bad law."[67] But, as we discussed earlier, there is no finding of insubordination in this record. Thus, the underlying premise of this argument is unsound. We reject it.

PSSP argues that Bolling committed misconduct under various other subsections of RCW 50.04.294. Specifically, it relies on (1)(b), (1)(d) and (2)(f) and argues that Bolling committed misconduct by purposely violating rules or directions and by acting carelessly or negligently. Because these arguments are first raised on appeal, we do not address them.

Under the WAPA, parties generally may not raise issues on appeal that were not raised before the agency, absent an applicable statutory exception in RCW 34.05.554(1). Further, "In order for an issue to be properly raised before

---

[67] Appellant's Reply Brief at 10-11 (citing The Markam Group, Inc, 148 Wn. App. at 564).

an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record."[68]

Here, PSSP does not explain how any of the statutory exceptions to preservation of arguments below apply to these new arguments on appeal. Accordingly, there is no basis for us to consider these new arguments.

PSSP asserts that it raised below the argument that Bolling violated a reasonable company rule. It points out that it identified a violation of a reasonable company rule as a ground for Bolling's discharge, and it included the company rules in the administrative record. But PSSP failed to make any argument about this at the agency level. Thus, this is nothing more than a slight reference to the issue in the record, which is insufficient to preserve the issue for review. Moreover, PSSP does not identify a specific company rule that Bolling allegedly violated until its reply brief. And arguments first raised in a reply are too late to warrant consideration.[69]

Finally, PSSP argues that Bolling had the burden of proving that his disobedience was justified. But PSSP also does not raise this argument until its reply brief, and thus, we do not consider it.

In sum, PSSP fails to show that the Commissioner erred in concluding that Bolling is entitled to benefits.

---

[68] King County v. Wash. State Boundary Review Bd. for King County, 122 Wn.2d 648, 670, 860 P.2d 1024 (1993).

[69] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

We affirm the superior court's order affirming the Commissioner's decision.

_Cox, J._

WE CONCUR:

_____

_Becker, J._