[No. 33284-1-II. Division Two. November 7, 2006.]

CARL A. ANDERSON, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

888

*Stephen M. Hansen* (of *Lowenberg, Lopez & Hansen, P.S.*), for appellant.

*Robert M. McKenna, Attorney General,* and *David I. Matlick, Assistant,* for respondent.

¶1 Armstrong, J. — Carl A. Anderson appeals the Employment Security Department's (Department) denial of unemployment compensation benefits to him based on work-related misconduct. Anderson argues that the Department's findings of fact do not support a conclusion that he willfully disregarded his employer's interest or that his misconduct harmed his employer. Because substantial evidence supports the Department's decision that Anderson intentionally and willfully disregarded his employer's interest, which created a conflict of interest that harmed his employer, we affirm.

## FACTS

¶2 King County (County) employed Carl Anderson as a program manager or property analyst from 1996 to 1998 as a temporary employee and from 1998 to 2003 as a permanent employee. In 1996, the County appointed Anderson project manager for the sale of a County-owned building

known as the Washington Center Building (WCB).[1] Anderson was responsible for gathering information on the property, preparing and issuing a request for proposals to the public, negotiating sale terms and completing the sale, and overseeing postsale compliance with the sale's contract.

¶3 After Anderson issued the request for proposals and the County received bids, Anderson told his superiors that he knew and had worked with the bidders from Washington Center Building Properties, L.L.C. (WCB Properties), Ginger Marshall and Vera Taylor. To avoid the appearance of a conflict of interest, the County made Anderson a nonvoting member of the review board and removed him from direct negotiations with WCB Properties after the County chose it as the successful bidder.[2]

¶4 In 2000, the County investigated allegations that Anderson had a conflict of interest in the WCB sale, centering on his relationship to WCB Properties and its principals. Anderson was "minimally cooperative" with the investigation; after supplying some information, he refused to answer questions about his relationship to Marshall, Taylor, and WCB Properties. Commissioner's R. (CR) at 852. Because Anderson refused to answer some questions, the investigating supervisor reached a "qualified" decision that Anderson did not have a conflict of interest. CR at 852. The supervisor also opined that Anderson's management of the WCB sale had not harmed the County.

¶5 In 2001, WCB Properties, Marshall, and Taylor sued Anderson; Anderson counter-claimed, alleging that since 1997, he had been a partner in WCB Properties and that he and his partners intended to jointly finance, develop, and operate the WCB property for profit. He demanded that Marshall and Taylor recognize him as a partner in WCB

---

[1] The property is also referred to as the Minor Avenue Property.

[2] The administrative law judge found that WCB Properties' bid was $1.8 million higher than the next lowest bid. Anderson testified that WCB Properties' bid was $800,000 higher than the next lowest bid. WCB Properties assigned its interest to a successor, Fairmont Properties, L.L.C. The purchaser eventually developed the WCB into affordable senior housing.

Properties, pay him one-third of the development fee obtained by WCB Properties, reimburse him for expenses he incurred on behalf of WCB Properties, and admit him as a member in WCB Properties.

¶6 In a deposition, Anderson testified that he helped prepare WCB Properties' bid in response to the request for proposals he had prepared;[3] that he was on the review board that looked at the bid he prepared, although he was a nonvoting member; and that he did not disclose his involvement with WCB Properties to the County. Anderson explained that he and Marshall agreed that Anderson would be a "secret" partner until it was appropriate for him to "come out of the closet" and that the reason for this secrecy was the "potential" conflict of interest with his County job. CR at 853. He asserted that he paid one-third of the costs of buying the WCB from the County.

¶7 The County's ethics code required Anderson to make yearly disclosures of finances and potential or actual conflicts of interest. It also required him to disclose in writing any conflict of interest he believed existed, regardless of the yearly filings. Anderson received a summary of the County's ethics code, including information on how to obtain a complete copy of the code on two occasions.

¶8 Anderson did not inform the County of his interest in WCB Properties at any time during his employment. And when his supervisors asked him about his connection with WCB Properties, Anderson either denied any interest in WCB Properties or refused to answer his supervisors' questions. The administrative law judge (ALJ) found that Anderson purposely hid his business and financial involvement with WCB Properties from the County, a finding Anderson does not contest.

¶9 After learning of Anderson's lawsuit with WCB Properties, the County again investigated Anderson's conflict of interest and ultimately discharged him in May 2003.

---

[3] Anderson also stated that he prepared the bid on his computer at work, thus using a County-owned computer to prepare a bid on behalf of his private business to buy property from the County.

¶10 The Department denied Anderson's claim for unemployment compensation benefits, finding that the County discharged him for work-related misconduct. An ALJ affirmed the Department's decision. The Department's commissioner affirmed the ALJ's decision, adopting and expanding on the ALJ's findings of fact and conclusions of law. The commissioner found that Anderson engaged in misconduct by willfully disregarding the County's interests and that his misconduct harmed the County. The Pierce County Superior Court affirmed the commissioner's decision.

¶11 The principal issues on appeal are whether the evidence supports the commissioner's findings that Anderson acted in willful disregard of the County's interests and, if so, whether the misconduct harmed the County.

ANALYSIS

I. STANDARD OF REVIEW

■ ¶12 In reviewing an administrative action, we review the commissioner's decision, applying the Administrative Procedure Act (APA), chapter 34.05 RCW, standards directly to the agency's administrative record. *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 112 Wn. App. 291, 296, 49 P.3d 135 (2002) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)).

■ ■ ¶13 We consider a commissioner's decision to be prima facie correct, and the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). The APA allows a reviewing court to reverse an agency decision when, among other things, (1) the administrative decision is based on an error of law, (2) the decision is not based on substantial evidence, or (3) the decision is arbitrary or capricious. RCW 34-.05.570(3); *Tapper*, 122 Wn.2d at 402.

■ ¶14 We review questions of law de novo, giving substantial weight to the agency's interpretation of the statutes it administers. *Superior Asphalt*, 112 Wn. App. at

296 (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988)). Where, as here, the commissioner's findings of fact are unchallenged,[4] we treat the findings as verities on appeal. *Fuller v. Dep't of Employment Sec.*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988). Whether an employee's behavior constitutes misconduct is a mixed question of law and fact. *Tapper*, 122 Wn.2d at 403.

## II. DISQUALIFYING MISCONDUCT

¶15 For claims arising before January 4, 2004, the Employment Security Act, Title 50 RCW, provides that an employee who was discharged or suspended for misconduct connected with the employee's work is disqualified from receiving unemployment compensation benefits. RCW 50-.20.060. As used in RCW 50.20.060, "misconduct" exists where an employee acts or fails to act in willful disregard of the employer's interest, thereby harming the employer's business. RCW 50.04.293.[5]

Willful Disregard of Employer's Interests

¶16 An employee acts in "willful disregard" of the employer's interest when the employee (1) is aware of the employer's interest and (2) knows or should know that certain conduct jeopardizes that interest but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences. *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998). Misconduct involves more than "[m]ere incompetence, inefficiency, erroneous judgment, or ordinary negligence." *Dermond v. Employment Sec. Dep't*, 89 Wn. App. 128, 133, 947 P.2d 1271 (1997) (citing *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 202, 940

---

[4] In this case, the commissioner adopted the ALJ's findings of fact and conclusions of law, elaborating on the ALJ's conclusions that Anderson acted in willful disregard of the County's interest and caused harm to the County. Anderson does not challenge the findings of fact on appeal.

[5] These statutes apply only to claims with an effective date before January 4, 2004. *See* RCW 50.04.293, 50.20.060. Because the County discharged Anderson in May 2003, these statutes govern his claim.

P.2d 269 (1997)). The commissioner found that Anderson's actions met all three elements and thus constituted willful disregard of the County's interests.

■ ¶17 Anderson does not dispute that he was aware of the County's ethical rules concerning disclosure of actual and potential conflicts of interest. He received a summary of the County's ethics code in 1996 and again in 1998, and he signed an acknowledgement of receipt each time. He also filed financial disclosure forms for the years 1997 through 2001. But Anderson contends that there was no evidence that he knew his conduct jeopardized the County's position in selling the WCB property or that he intended to jeopardize the County's position in selling the property.

¶18 As an initial matter, the commissioner found that Anderson harmed the County's interest in preventing conflicts of interest, not its interest in selling the WCB property.[6] The ALJ's unchallenged findings of fact support the conclusion that Anderson knew or should have known that acting as project manager for the WCB sale jeopardized the County's interest in eliminating conflicts of interest from the bidding process. Anderson was aware of the County's ethics rules and should have been aware that acting on both sides of a transaction with the County was a violation.[7] In fact, he testified that he was a "secret" partner of WCB

---

[6] In fact, the successful bid from WCB Properties was $1.8 million higher than the next lowest bid.

[7] The ethics code provides that an employee has a conflict of interest where, among other things, the employee:

2. Is beneficially interested, directly or indirectly, in any contract, sale, lease, option or purchase that may be made by, through, or under the supervision of the employee, in whole or in part, or accepts, directly or indirectly, any compensation, gift or thing of value from any other person beneficially interested therein;

. . . .

5. Participates in, influences or attempts to influence, directly or indirectly, the selection of, or the conduct of business or a transaction with a person doing or seeking to do business with the county if the employee has a financial interest in or with said person;

. . . .

Properties because of his concerns about a conflict of interest between his financial interest in WCB Properties and his job with the County. Anderson also refused to answer his supervisors' questions about his relationship with WCB Properties, Marshall, and Taylor, especially the financial aspects, and failed to disclose a financial interest in WCB Properties in his financial disclosure statements to the County. These facts demonstrate that Anderson knew or should have known his actions violated the County's ethics code.

¶19 Anderson's argument that he did not intend to jeopardize the County's position in selling the WCB property is unpersuasive. Willful disregard does not require intent to harm the employer's business. *Hamel,* 93 Wn. App. at 146. Rather, because "willful" modifies "disregard," the employee must only have voluntarily disregarded the employer's interest; the employee's specific motivations for doing so are not relevant. *Hamel,* 93 Wn. App. at 146. Thus, it does not matter whether Anderson intended to jeopardize the County's position in selling the WCB property. He intentionally acted as both a buyer and seller in the WCB sale, hid his buyer's interest, and either lied to his supervisors about his interest in WCB Properties or refused to answer questions about his interest. Thus, Anderson intentionally acted in a manner that jeopardized the County's interest in preventing conflicts of interest. In doing so, he willfully disregarded the possible consequences of his conflict.

¶20 Anderson contends that his actions were, at worst, merely ineffective or negligent. He claims that he tried to comply with the County's ethics rules by informing his

---

8. Is an employee, agent, officer, partner, director or consultant of any person doing or seeking to do business with the county, unless such relationship has been disclosed as provided by this chapter;

. . . .

11. Enters into a business relationship outside [the] county government with any person with regard to a matter for which the employee has responsibility as a county employee.

CR at 695-97.

supervisors that he had "personal" and "professional" relationships with Marshall and Taylor. Br. of Appellant at 22. He relies on *Ciskie v. Department of Employment Security*, 35 Wn. App. 72, 664 P.2d 1318 (1983), where the employee tried to notify a supervisor that he was leaving work for a family emergency, but no supervisor was on the work site. *Ciskie*, 35 Wn. App. at 74. In *Ciskie*, we found that while the employer had good cause to terminate the employee, the employee's action did not rise to the level of misconduct. *Ciskie*, 35 Wn. App. at 76.

¶21 *Ciskie* does not help Anderson. Anderson was not acting in good faith in response to an emergency. He purposely, not negligently, hid his business and financial involvement with WCB Properties. Anderson never attempted to inform the County of the true nature of his conflict of interest but instead sought to obfuscate it. While the County was able to take proper measures in response to the potential conflict of interest Anderson did reveal (social relationships with bidders on the WCB property), it had no opportunity to respond to Anderson's true conflict of interest (bidding on the project for which he was the project manager).

¶22 Accordingly, the commissioner's findings support his conclusion that Anderson committed misconduct with intentional disregard for the County's interests.

Harm to Employer's Business

¶23 To show that an employee's actions harmed the employer's business, an employer must objectively demonstrate actual detriment to its operations. *Dermond*, 89 Wn. App. at 135-36. The harm need not be tangible or economic, but it must be more than imaginary or hypothetical. *Dermond*, 89 Wn. App. at 135. The commissioner, applying this standard, found that Anderson's failure to comply with the County's ethics code harmed the County.

¶24 Anderson maintains that the record shows that he did not actually harm the County. He points to finding of fact 30, which states that there is no evidence that Ander-

son's access to information as a county employee harmed the County financially.[8] But the finding of fact continues:

> However, had the County known of [Anderson's] true . . . involvement with WCB Properties LLC, and the two principle [sic] women, it would have removed him entirely from having any official duties related to the sale of the WCB. Because of the actual conflict of interest, it would not have been sufficient under the Code of Ethics to simply remove [Anderson] as a voting member of the review board and from negotiations for the sale, as was done based on [Anderson's] revelations about his involvement with the business.

CR at 855. Rather than support Anderson's position, this finding of fact, taken as a whole, shows that Anderson's failure to disclose the true nature of his conflict of interest actually harmed the County by preventing the County from complying with its own ethics code.

¶25 Anderson also relies on finding of fact 29, which finds that "[i]t can never be known what, if any, effect [Anderson's] insider knowledge of the WCB deal had on any of the other bidders, or how it might have influenced the review board's final choice of WCB Properties LLC as the winning bid." CR at 855. Anderson argues that this shows there was no actual harm to the County, only imaginary or theoretical harm.

¶26 Taken out of context, this argument seems plausible. But finding of fact 29, when read together with finding of fact 28, tells us that Anderson, as project manager for the WCB sale, had access to information that none of the other bidders had, could give potential bidders information that would discourage them from bidding, and was in a position to influence the outcome of the sale. Finding of fact 29, after stating that the effects of Anderson's insider knowledge on the other bidders and the review board's decision can "never be known," provides that:

---

[8] The commissioner found that selling the property for the most amount of money was not the primary consideration in the sale. Instead, the County's primary goal was to ensure the buyer properly developed the WCB property into affordable housing.

[Anderson] was involved to a substantial degree in the gathering and dissemination of information about the WCB, the sale, the bidding process, and myriad other processes, both to the public and to potential buyers, as well as to the County. [Anderson] performed innumerable tasks that were done in preparation for the sale of the building, and then in the development of the building as affordable housing.

CR at 855. That the County can never know how or even whether Anderson influenced the bidding outcome does not mean the County came through the sale unscathed. The County prohibits conflicts of interest to ensure both fairness and the appearance of fairness in the public bidding process. And even if Anderson did not use his seller's role to help himself in his buyer's role, the appearance of unfairness remains. Past bidders who learn of the conflict[9] will likely question whether they ever had a fair chance to purchase the property; future bidders may be reluctant to bid on County property because of lingering doubts about the County's bid procedure. Finally, the public has the right to know that its County representatives acted solely for the County's benefit in selling the property; those members of the public who learn of Anderson's duplicitous conduct may reasonably question whether that occurred. We agree with the commissioner that Anderson's conflict of interest and his attempts to hide it have harmed the County, and although the harm may not be measurable, it is, nonetheless, real. *See Dermond*, 89 Wn. App. at 135-36 (employee's unwillingness to follow employer's policy or correct behavior harmed employer's operations).

¶27 We conclude that the commissioner's findings support the Department's conclusion that Anderson's misconduct harmed the County.

¶28 Affirmed.

BRIDGEWATER and HUNT, JJ., concur.

---

[9] The public will have access to the story of Anderson's dual roles in the sale because of his lawsuit against the other principals in WCB Properties.