

COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 OCT 14  AM 6: 07

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JAY C. NYKOL, | ) | No. 69279-8-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE | ) | |
| DEPARTMENT OF | ) | UNPUBLISHED OPINION |
| EMPLOYMENT SECURITY, | ) | |
| | ) | FILED: October 14, 2013 |
| Respondent. | ) | |

VERELLEN, J. — Former Boeing employee Jay Nykol appeals the decision denying his application for unemployment benefits. Boeing terminated his employment as a firefighter when his driver's license was suspended due to an off-duty driving under the influence (DUI) charge. Nykol argues that he did not violate the work rule requiring him to have a valid Washington driver's license because he obtained a restricted ignition interlock driver's license (Interlock License) after his regular license was suspended. In the alternative, Nykol contends that he was terminated not because of his misconduct, but because Boeing failed to accommodate his disability of alcoholism by signing a waiver allowing him to drive the company's vehicles. Neither argument is persuasive. We affirm.

FACTS

Nykol began working for Boeing in 1988, and was last employed as a firefighter driver/operator on April 20, 2011. The pertinent collective bargaining agreement requires that firefighters must have a valid Washington State driver's license. Nykol knew this requirement.

Nykol was charged with DUI in September 2010. Nykol's regular driver's license was suspended pursuant to a pretrial diversion agreement. He obtained a restricted Interlock License[1] that permitted him to drive vehicles equipped with an ignition interlock device. Nykol also enrolled in an alcohol treatment program.

After Nykol advised Boeing of his DUI charge, license suspension, and restricted Interlock License, Boeing considered and rejected two alternatives that would allow Nykol to continue to drive its emergency vehicles. First, Boeing could have ignition interlock devices installed on every emergency vehicle that Nykol might be required to drive. Boeing determined this was impractical. Second, Boeing had the option of waiving the ignition interlock device requirement, pursuant to RCW 46.20.385(1)(c)(i), which would allow Nykol to drive its vehicles. However, Boeing adhered to its preexisting policy of declining to execute ignition interlock device waivers due to liability and safety issues. Because Nykol was unable to perform his job duties in these circumstances, Boeing terminated his employment.

---

[1] An Interlock License is a permit issued by the Department "that allows the person to operate a noncommercial motor vehicle with an ignition interlock device while the person's regular driver's license is suspended, revoked, or denied." RCW 46.04.217.

The Department of Employment Security (Department) denied Nykol's claim for unemployment insurance benefits. Nykol appealed, and a hearing was conducted by an administrative law judge. The administrative law judge affirmed, concluding that Nykol was discharged due to misconduct; specifically, for losing his driver's license. Nykol petitioned for review of the administrative law judge's order by the commissioner of the Department. The commissioner affirmed. Nykol then petitioned King County Superior Court to review the commissioner's ruling pursuant to the Administrative Procedure Act, chapter 34.05 RCW. The superior court affirmed, and denied Nykol's subsequent motion for reconsideration. Nykol appeals.

## DISCUSSION

Nykol disputes the commissioner's conclusion that he committed per se misconduct pursuant to RCW 50.04.294(2)(f) by violating Boeing's driver's license requirement. Instead, Nykol contends that his Interlock License is a valid Washington driver's license, hence, he never violated the driver's license requirement. He alternatively argues that Boeing had a duty to accommodate his disability of alcoholism by signing an ignition interlock device waiver. Neither argument is persuasive.

When a claimant has been discharged or suspended for misconduct connected with his or her work, he or she is disqualified from receiving unemployment insurance benefits.[2] The existence of misconduct is a mixed issue of fact and law.[3] Such

---

[2] RCW 50.20.066(1).

[3] Tapper v. State Emp't Sec. Dep't, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993); see also Daniels v. State Dep't of Emp't Sec., 168 Wn. App. 721, 727, 281 P.3d 310, review denied, 175 Wn.2d 1028 (2012); Markham Grp., Inc., P.S. v. State Dep't of Emp't Sec., 148 Wn. App. 555, 561, 200 P.3d 748 (2009).

misconduct is defined as including:

(a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;[4]

(b) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;

(c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or a fellow employee; or

(d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.[5]

Per se misconduct also includes the "[v]iolation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule."[6]

Nykol does not dispute that the requirement that he possess a valid Washington driver's license is a company rule, that the rule is reasonable, or that the loss of his regular driver's license was work related.

In reviewing administrative action, this court sits in the same position as the superior court, applying the standards of the Administrative Procedures Act directly to the record before the agency.[7] The Administrative Procedures Act allows a reviewing court to reverse an administrative decision when the decision is based on an error of law, is not based on substantial evidence, or is arbitrary or capricious.[8]

---

[4] An employee acts with willful disregard of an employer's interest when the employee "(1) is aware of his employer's interest; (2) knows or should have known that certain conduct jeopardizes that interest; but (3) nonetheless intentionally performs the act, willfully disregarding its probable consequences. Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 146-47, 966 P.2d 1282 (1998).

[5] RCW 50.04.294(1).

[6] RCW 50.04.294(2(f).

[7] Macey v. Emp't Sec. Dep't, 110 Wn.2d 308, 312, 752 P.2d 372 (1988).

[8] RCW 34.05.570(3).

Nykol first contends his specialty Interlock License was a "valid" Washington driver's license. But Nykol acknowledges that he was not allowed to drive company vehicles unless ignition interlock devices were installed or Boeing signed a waiver. It is also undisputed that Boeing declined to install ignition interlock devices or to sign a waiver, consistent with its preexisting policy. Nykol provides no compelling authority or argument that his specialized license with its limitations is an unqualified valid Washington State driver's license for purposes of the company rule. The plain and ordinary meaning of the term "valid Washington driver's license" is a license that allows a person to drive in Washington unrestricted and unfettered, with no special conditions. It does not mean a specialty license, available only if an individual's regular license is suspended, that has special restrictions and conditions. Nykol's violation of the work rule requiring a valid Washington driver's license was per se misconduct.

Nykol also argues that that Boeing failed to reasonably accommodate his disability of alcoholism as required by the Law Against Discrimination, chapter 49.60 RCW. That statute provides that it is an unfair practice for any employer:

(2)     To discharge or bar any person from employment because of . . . the presence of any sensory, mental, or physical disability. . . .

(3)     To discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability.[9]

Under RCW 49.60.040(7), "disability" means "a sensory, mental, or physical impairment that . . . [i]s medically cognizable or diagnosable; or . . . [e]xists as a record or history; or . . . [i]s perceived to exist whether or not it exists in fact."

_____

[9] RCW 49.60.180.

Nykol testified at the administrative hearing that he told Boeing that he was "suffering from alcoholism,"[10] but presented no other evidence of his diagnosis. He also failed to present evidence that would allow a determination that his diagnosis met the statutory definition of a disability that would require accommodation. There are serious doubts whether an employer's failure to accommodate an employee's alleged disability impacts a determination of per se misconduct for purposes of unemployment benefits. Nykol provides no compelling authority that discrimination on the basis of disability impacts per se misconduct for purposes of unemployment benefits.[11] Further, even assuming that RCW 49.60.180 has some application to unemployment benefit determinations, this limited record and limited briefing do not establish a failure to accommodate a disability. Nykol fails to meet his burden of demonstrating the invalidity of the commissioner's decision.[12]

---

[10] Certified Appeal Board Record at 29.

[11] Nykol argues that a court can determine "whether one could or should receive unemployment benefits if an employee's rights guaranteed by RCW 49.60.et.seq., were being violated." Reply Br. at 17. He cites Martini v. Emp't Sec. Dep't, 98 Wn. App 791, 796, 990 P.2d 981 (2000) (Minimum Wage Act violation by employer gave employee "per se good cause" to voluntarily leave work, entitling employee to benefits), Sweitzer v. Emp't Sec. Dep't, 43 Wn. App. 511, 516, 718 P.2d 3 (1986) (stating in dicta that if job assignments a female employee received "were the result of sex discrimination," she would have good cause to voluntarily quit and be entitled to benefits), and Hussa v Emp. Sec. Dep't, 34 Wn. App. 857, 864, 664 P.2d 1286 (1983) (female employee who voluntarily quit for good cause due to sex discrimination was entitled to unemployment benefits). But those cases all involve determinations of whether an employee voluntarily quit for good cause and are not instructive in the context of an employee's termination for per se misconduct.

[12] See RCW 34.05.570(1)(a); Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010); Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006).

Nykol contends it would be error to disqualify him from benefits solely on the basis that he was not "unemployed through no fault of his own," referencing RCW 50.01.010. But the commissioner's denial of benefits here was premised on a finding of per se misconduct. Accordingly, this case does not present the issue of whether an employee's fault is an adequate basis for denying benefits, absent misconduct.

Nykol fails to demonstrate reversible error.[13]

Affirmed.

WE CONCUR:

---

[13] Nykol requests attorney fees, pursuant to RCW 50.32.160. Because he does not prevail in his appeal, we deny his request.