# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KELLY M. SENNOTT,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF EMPLOYMENT<br>SECURITY,<br><br>Respondent. | No. 78673-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br>FILED: July 15, 2019 |

ANDRUS, J. — Kelly Sennott appeals the denial of unemployment benefits by the Washington State Employment Security Department. Because a commissioner of the Department properly concluded that Sennott voluntarily quit her job without good cause, we affirm.

## FACTS

Sennott worked for four years as an office manager for a medical clinic. At the time, Sennott was a single parent of two young children. She woke her children up at 7:15 a.m. and dropped them off at her parents' house before going to work.

After separating from her job, Sennott applied for and began receiving unemployment benefits. To remain eligible for unemployment benefits, Sennott was required to look for and accept suitable employment. On May 6, 2017, Sennott began working for Triple 7 Restaurant and Bar as a server and cashier. Sennott was scheduled to work approximately 25 hours per week. All of Sennott's shifts for the first month, with the exception of one, were scheduled to begin at 5:30 a.m.

Sennott testified that this schedule would require her to wake her children up at 3:30 a.m. to take them to her parents' house "and that's just not really feasible for them." Sennott quit after four days of work.

The Department denied Sennott unemployment benefits for the period after May 7, 2017, finding that Sennott had voluntarily quit her job without good cause. Sennott appealed. An administrative law judge (ALJ) conducted a hearing at which Sennott was the only witness. The ALJ found that Sennott was available for work and had actively sought suitable work. However, based on Sennott's testimony, the ALJ found that Sennott voluntarily quit her job without good cause.

> Claimant quit her job because she did not want to wake up her children early in the morning to take them to her parents' house, so that she could work. This reason is a personal reason, and not one of the eleven exclusive, nondisqualifying reasons needed to establish good cause.

The ALJ affirmed the Department's decision.

Sennott petitioned for review of the ALJ's order. A commissioner of the Department adopted the ALJ's findings of fact and conclusions of law in their entirety. The commissioner concluded that Sennott was disqualified from receiving unemployment benefits because she voluntarily quit her job without good cause.

> Responding to the Petition for Review, we understand that the claimant may have had a very good reason to quit her employment due to a lack of child care. However, a good reason does not necessarily equate to a "good cause" basis for her voluntary quit for the purpose of unemployment insurance. The Court of Appeals has held that, "when the legislature amended RCW 50.20.050(2)(b) in 2009, it made clear that good cause to quit was limited to the listed statutory reasons." Campbell v. Employment Security Dept., 174 Wn. App. 210, 216-217, 297 P.3d 757 (2013), aff'd, 180 Wn.2d 566, 326 P.3d 713 (2014). Here, the legislature has only provided for "good cause" in eleven circumstances. See adopted Conclusion of

2

Law No. 8. Lack of childcare is not a good cause reason. Consequently, claimant has been properly disqualified pursuant to RCW 50.20.050.

The commissioner concluded that there was insufficient information to determine whether Sennott was disqualified from receiving unemployment benefits because she did not make herself fully available for work.

> Next, in order to be eligible for unemployment benefits, a claimant must be available for work. RCW 50.20.010(1)(c). A claimant may place certain restrictions upon his or her availability and yet be eligible for benefits, but if he or she places a substantial restriction upon availability, he or she will be deemed unavailable. See, e.g., In re White, Empl. Sec. Comm'r Dec.2d 108 (1975). Lack of adequate child care may constitute a substantial restriction. In re Lininger, Empl. Sec. Comm'r Dec.2d 213 (1976); In re Yeoman, Empl. Sec. Comm'r Dec. 1200 (1974); In re Potts, Empl. Sec. Comm'r Dec. 425 (1959); In re Latham, Empl. Sec. Comm'r Dec. 163 (1955). Generally, a restriction is substantial if it renders a claimant unavailable for any hours customarily worked in occupations in which he or she is seeking employment. See, e.g., In re Erickson, Empl. Sec. Comm'r Dec. 1253 (1975). It is not enough for a claimant to show, as here, that he or she is available for some of the hours during which the work in question is customarily performed. See, e.g., In re Wolanski, Empl. Sec. Comm'r Dec.2d 860 (1997).

> At the time of her separation from employment, it would appear that claimant's lack of childcare restricted her availability for customary work. Based on her testimony, we are aware that any potential restriction was ultimately resolved with her children's change in schools and husband's availability. However, the record does not clearly establish when these changes occurred. Therefore, we will remand the matter to the Department for further investigation of claimant's availability pursuant to RCW 50.20.010(1)(c) for the weeks at issue.

The commissioner affirmed the ALJ's order "as to the job separation." The commissioner vacated the ALJ's order as to Sennott's availability and remanded to the Department for further investigation.

3

Sennott appealed to the superior court, which affirmed the Commissioner's decision. Sennott appeals.

## DISCUSSION

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the Employment Security Department. Tapper v. Emp't Sec. Dep't., 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper, 122 Wn.2d at 402. Because this court sits in the same position as the superior court, we do not give deference to the superior court's rulings. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). The decision on review is that of the commissioner of the Department, not the underlying decision of the administrative law judge. Verizon Nw., 164 Wn.2d at 915.

A commissioner's decision is considered "prima facie correct." Anderson v. Emp't Sec. Dep't. 135 Wn. App. 887, 893, 146 P.3d 475 (2006). Sennott, as the party asserting error, bears the burden of demonstrating the invalidity of the Department's action. RCW 34.05.570(1)(a). RCW 34.05.570(3) enumerates the grounds upon which we will reverse a commissioner's decision. These include that the agency erroneously interpreted or applied the law or substantial evidence does not support the decision. RCW 34.05.570(3).

The Employment Security Act, Title 50 RCW, sets aside unemployment reserves to be used for the benefit of persons unemployed through no fault of their

4

own. RCW 50.01.010. However, an individual is disqualified from receiving benefits if he or she leaves work voluntarily without good cause. RCW 50.20.050(1). The statute further provides that "[g]ood cause reasons to leave work are limited to reasons listed in (b) of this subsection." RCW 50.20.050(2)(a). Consequently, an individual who voluntarily leaves work must satisfy one of the eleven exclusive factors in RCW 50.20.050(2)(b) in order to demonstrate good cause.[1]

Sennott contends that the commissioner erred in finding that she voluntarily quit without good cause. She contends that RCW 50.20.050 does not apply because "rather than quitting her job, she refused new work that was not suitable."

To be eligible to receive unemployment benefits, an individual must be "available for work in any trade, occupation, profession, or business for which he or she is reasonably fitted." RCW 50.20.010(1)(c). "[T]o be available for work an individual must be ready, able, and willing, immediately to accept any suitable work

---

[1] The factors are:
    (1) The employee left work to accept a bona fide offer of bona fide work;
    (2) The employee left work due to his or her own illness or disability, or the death, illness or disability of his or her immediate family;
    (3) The employee left work to relocate for the spouse's employment due to a mandatory military transfer;
    (4) The employee left work to protect himself or herself or immediate family members from domestic violence;
    (5) The employee's usual compensation was reduced by twenty-five percent or more;
    (6) The employee's usual hours were reduced by twenty-five percent or more;
    (7) The employee's worksite was substantially changed, resulting in a longer commute than is customary for workers in the employee's labor market;
    (8) Worksite safety deteriorated and the employer failed to correct the hazards within a reasonable period of time;
    (9) The employee left work because of illegal activities at the worksite;
    (10) The employee's usual work was changed to work that violates the individual's religious convictions or sincere moral beliefs; or
    (11) The employee left work to enter an apprenticeship program.

RCW 50.20.050(2)(b).

5

which may be offered to him or her." RCW 50.20.010(1)(c)(ii). However, the Department may not deny an individual unemployment benefits if "there is a substantial change in working conditions so as to constitute an offer of new work and the change is not authorized or implied by the original employment agreement." WAC 192-150-150(3)(b).

Sennott contends that she "believed she was hired to perform duties under a shift of employment that involved occasional very early morning shifts." She argues that when she learned that all of her shifts would begin at 5:30 a.m., this constituted a substantial change in working conditions. But there is no evidence in the record to support Sennott's claim of a substantial change in her working conditions. When asked, "Were you aware of the terms and conditions of your job, things like policies, procedures, and expectations," Sennott responded, "Yes." Sennott also testified:

> And I realized too early on, I mean, right after I took the job, that I probably should never have taken it (inaudible) at 5:30 in the morning. I just thought it was the right thing to do was to accept the job, and I couldn't have them train me knowing that I was going to have to find something else.

Thus, Sennott acknowledged that she accepted the job with knowledge of the early morning hours.

Consequently, the early morning hours did not transform Sennott's job into "new work" that she was entitled to refuse. Instead, the question was whether Sennott had good cause to quit her existing job. Sennott does not challenge the commissioner's finding that Sennott did not establish one of the listed statutory reasons constituting good cause. This unchallenged finding is a verity on appeal.

6

See Michaelson v. Emp't Sec. Dep't, 187 Wn. App. 293, 299, 349 P.3d 896 (2015). The commissioner did not err in finding that Sennott voluntarily quit working without good cause.

Sennott also raises two claims related to her availability for work. She argues that the availability requirement violates the equal protection clauses of the United States and Washington Constitution because it disproportionately burdens those whose customary hours are "24/7."[2] She additionally argues that the Department's failure to consider an employee's caregiving responsibilities when making a determination of availability violates the legislature's purpose in enacting Title 50. While these are important questions deserving of consideration, Sennott lacks standing to raise them.[3]

Only "aggrieved or adversely affected" persons have standing to obtain judicial review of agency action. RCW 34.05.530. This occurs when (1) the agency action has prejudiced or is likely to prejudice that person; (2) the person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and (3) a judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action. RCW 34.05.530. The party seeking

---

[2] To be eligible for unemployment benefits, an individual must be available to work "during all of the usual hours and days of the week customary for [their] occupation." WAC 192-170-010(1)(a). According to Sennott, the Employment Security Department requires that restaurant servers and cashiers be available for work 24 hours a day, 7 days a week.

[3] We have previously recognized that "unemployment laws can disfavor parents who have to juggle their responsibilities to their children with their need for employment outside the home." See Ali v. Dep't of Employment Sec., noted at 4 Wn. App. 2d 1069 (2018). But we again note, as we did in Ali, that the statute is unambiguous and that changes to public policy are a legislative, not a judicial function.

to obtain judicial review of an agency action bears the burden of establishing standing. City of Burlington v. Wash. State Liquor Control Bd., 187 Wn. App. 853, 861, 351 P.3d 875 (2015).

The commissioner vacated the ALJ's finding as to Sennott's availability to work. Any injury that Sennott experiences from the agency action relates only to the finding that she voluntarily quit without good cause. Sennott has not established standing to raise claims related to availability.[4]

Affirmed.

Andrus, J.

WE CONCUR:

Leach, J.

Mann, ACJ

---

[4] Moreover, as the Department notes, because Sennott was disqualified from receiving unemployment benefits because she quit her employment without good cause, the question of whether Sennott was available to work is moot.