# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LAURIE A. ENGLUND,<br><br>        Appellant,<br><br>        v.<br><br>STATE OF WASHINGTON,<br>EMPLOYMENT SECURITY<br>DEPARTMENT,<br><br>        Respondent. | No. 85694-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Laurie Englund challenges the decision of the commissioner (Commissioner) of the Employment Security Department (ESD) denying her unemployment benefits. Englund asserts that the Commissioner's decision was not supported by substantial evidence, arguing her refusal to comply with the Bellevue School District's (District) COVID-19 vaccination requirement did not fall within the statutory definition of "misconduct" for purposes of unemployment benefits. We disagree, and affirm.

I

In January 2020, the first reported cases of COVID-19 were confirmed in Washington State. The number of cases quickly grew and by the end of the month, both the World Health Organization and the United States Health and Human Services Secretary had declared a public health emergency. Gonzales v. Inslee, 2 Wn.3d 280, 286, 535 P.3d 864 (2023), petition for cert. filed, No. 23-935 (U.S. Feb. 23, 2024). As COVID-19 spread, Governor Jay Inslee declared a state of

emergency and issued multiple proclamations aimed at slowing the spread of the disease. Id. Despite these efforts, COVID-19 took a heavy toll, claiming the lives of tens of thousands of people in Washington. Sehmel v. Shah, 23 Wn. App. 2d 182, 194, 514 P.3d 1238 (2022).

By the start of 2021, multiple pharmaceutical companies had developed vaccines for COVID-19 that were safe and effective in reducing infection and serious disease. Proclamation by Governor Jay Inslee, No. 21-14.2, at 2 (Wash. Sept. 27, 2021), https://governor.wa.gov/sites/default/files/proclamations/21-14.2%20-%20COVID-19%20Vax%20Washington%20Amendment%20%28tmp%29.pdf [https://perma.cc/5LJ7-LPZH]. By April 15, 2021, COVID-19 vaccinations were available to everyone over the age of 16 free of charge. Id. Widespread COVID-19 vaccinations became "the primary means we have as a state to protect our health care system, to avoid the return of stringent public health measures, and to put the pandemic behind us." Id.

On August 18, 2021, Governor Inslee announced a directive requiring all employees working for K-12 schools to be vaccinated or obtain a religious or medical exemption by October 18, 2021.[1] Proclamation 21-14.1 stated that any school employee who did not become vaccinated or obtain a valid exemption by October 18, 2021, would be prohibited from engaging in work for the operator of any education setting. Proclamation by Governor Jay Inslee, No.21-14.1, at 4-5 (Wash. Aug. 20, 2021), https://governor.wa.gov/sites/default/files/proclamations/

---

[1] The governor did not issue any proclamations on August 18, 2021. We presume the announcement pertained to the governor's proclamation issued on August 20, 2021.

21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf [https://perma.cc/XVZ9-S3MN]. The proclamation further stated that all operators of educational settings

> [m]ust, to the extent permitted by law, before providing a sincerely held religious belief accommodation to the requirements of this Order, document that the request for an accommodation has been made and include a statement in the document explaining the way in which the requirements of this order conflict with the sincerely held religious belief, practice, or observance of the individual.

Id. at 5. Finally, the proclamation imposed criminal penalties for any violation of its terms. Id. at 13.

Englund was formerly employed as an office manager at Woodridge Elementary School in the Bellevue School District. On August 19, 2021, the District sent out an e-mail to staff informing them about Governor Inslee's directive and warning them that " '[e]mployees who do not provide proof of vaccination or a medical or religious exemption will be subject to nondisciplinary dismissal from employment for failing to meet the qualifications of the job.' " Englund's union agreed to the vaccination requirements and entered a memorandum of understanding (MOU) outlining the verification and exemption processes. Englund repeatedly expressed her disagreement with the requirements and told the District that she thought their reminder e-mails constituted "harassment."

On September 27, 2021, Governor Inslee issued Proclamation 21-14.2, updating the requirements from Proclamation 21-14.1. As did the prior proclamation, Proclamation 21-14.2 prohibited any worker from engaging in work in an educational setting after October 18, 2021 if they had not either been

vaccinated or received a medical or religious accommodation. Proclamation 21-14.2 at 4. That same day, the District sent another e-mail to all employees who had not yet provided proof of vaccination or requested an exemption, including Englund. This e-mail reminded those employees of the October 18 deadline and stated, in bold print, "[e]mployees who do not provide proof of vaccination or a medical or religious exemption will not be permitted to perform any duties and may be subject to dismissal from employment for failing to meet this condition of employment." The District's assistant superintendent of human resources sent another letter to Englund, notifying her that if she did not contact human resources by October 18, the District would begin the process of terminating her employment. Englund responded by claiming that the letter constituted "wrongful threats and intimidation" and that the directive was "illegal."

By October 18, Englund had neither submitted proof of vaccination nor requested a medical or religious exemption. The District terminated Englund's employment and notified her that she was prohibited from reporting for work as of October 19, 2021. On December 20, 2021, Englund sent a document to the District entitled "Statement of Declination of COVID-19 Vaccine Product (Claim of Religious Exemption)." In it, she claimed a religious exemption from the COVID-19 vaccines.

Englund applied for unemployment benefits with the ESD. In a written response to Englund's claim provided to ESD by February 9, 2022, the District reported that its vaccine policy was implemented pursuant to Governor Inslee's mandate, and explained, "we offered both religious and medical exemption," but

4

Englund "did not apply for one." On February 10, 2022, ESD issued a determination letter denying benefits on the basis that Englund was discharged for misconduct. Englund filed an appeal and submitted hundreds of pages of documents on her behalf. The Office of Administrative Hearings conducted a hearing on February 14, 2023, at which the District did not appear. Following the hearing, the Administrative Law Judge (ALJ) concluded that Englund had been discharged due to a willful or wanton disregard of the rights, title, and interests of the Employer and was therefore disqualified from receiving benefits.

Englund subsequently filed a petition for review. The ESD Commissioner affirmed the order and adopted the ALJ's findings of fact and conclusions of law in full. Englund filed for reconsideration, which the ESD Commissioner denied. Englund then appealed to superior court. The superior court certified the matter to this court for review.

II

The State moves to strike Englund's amended reply brief for failing to comply with the commissioner's order that she refile her brief "without attaching documents that are not part of the record, particularly a declaration and argument addressing the merits of the case." RAP 10.7 provides this court with the discretion to strike an improper brief, or to accept the brief without consideration of any improper argument. In re Adoption of R.L.M., 138 Wn. App. 276, 283, 156 P.3d 940 (2007). We decline to strike Englund's reply brief in its entirety. However, we strike all documents included in the appendix to the reply brief, for Englund's failure

5

to comply with RAP 9.11.[2] Any argument pertaining to those documents contained in the reply brief has not been considered by this court in deciding this matter.

III

Our review of a decision issued by the ESD Commissioner is governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. RCW 34.05.570; RCW 50.32.120. Both the superior court and this court sit in the same position as an appellate court. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). We review the decision of the Commissioner rather than the ALJ, except to the extent that the Commissioner adopted the ALJ's findings and conclusions. Id.

"We consider a Commissioner's decision to be prima facie correct and the 'burden of demonstrating the invalidity of agency action is on the party asserting invalidity.' " Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010) (quoting RCW 34.05.570(1)(a) and citing Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006)). A decision is invalid if it is based on an error of law, if substantial evidence does not support the decision, or if it was arbitrary and capricious. Smith, 155 Wn. App. at 32 (citing RCW 34.05.570(3)(d), (e), (i)).

A

Englund initially asserts that this court lacks jurisdiction over this matter because it was not fully adjudicated in superior court. We disagree.

---

[2] This court may accept additional evidence on appeal when the proponent of the evidence sets out the six requirements for supplementation of the record under RAP 9.11. Englund did not address any of the six requirements before attaching the appendix to her reply brief.

"An appeal from a final order of an administrative agency invokes the appellate, rather than general, jurisdiction of the superior court." Biomed Comm, Inc. v. Dep't of Health Bd. of Pharmacy, 146 Wn. App. 929, 933, 193 P.3d 1093 (2008) (citing Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County, 135 Wn.2d 542, 555, 958 P.2d 962 (1998)). When a superior court is acting in its appellate capacity, the confines of its jurisdiction are dictated by statute. Id.; see also Const. art. IV, § 6 (Superior courts "shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law.").

In appeals from an administrative agency, the court's jurisdiction is set by the APA. RCW 34.05.518(1)[3] states that a final decision of an administrative agency may be reviewed directly by the court of appeals if the superior court finds that

> (b) One or more of the parties have not consented to the transfer, but the superior court finds that transfer would serve the interest of justice, would not cause substantial prejudice to any party, including any unrepresented party, and further finds that:
>
> > (i) The judicial review can occur based upon the agency record developed before the administrative body without supplementing the record pursuant to RCW 34.05.562; or
> > (ii) The superior court has completed any necessary supplementation of the record pursuant to RCW 34.05.562, such that only issues of law remain for determination.

Englund separately filed a motion for discretionary review of the trial court's order certifying this matter to this court. This court's commissioner denied the

---

[3] Effective Jun 6, 2024, RCW 34.05.518(1)(b) will be renumbered as RCW 34.05.518(1)(a)(ii).

motion, ruling that Englund had failed to demonstrate error, as required for discretionary review under RAP 2.3(b), because the superior court made all of the requisite findings in its order certifying the case to this court. We denied Englund's motion to modify the commissioner's ruling. We decline to reconsider that ruling in this case.

B

Englund next asserts that she was entitled to a default judgment because the Bellevue School District did not participate in the administrative hearing. We disagree.

Under the APA, the presiding officer in an administrative hearing "<u>may</u> serve upon all parties a default" order should one of the interested parties decline to appear at the hearing. RCW 34.05.440(2) (emphasis added). However, nothing in the Act <u>requires</u> the presiding officer to do so. Here, the presiding officer declined to issue a default order because Englund was the party who challenged the denial of benefits and she was present at the hearing. The presiding officer did not abuse their discretion in declining to issue a default order.

C

"Under the Employment Security Act, Title 50 RCW, a discharged worker who commits 'misconduct connected with his or her work' cannot receive unemployment compensation benefits." <u>Smith</u>, 155 Wn. App. at 34 (quoting RCW 50.20.066(1)). Whether an employee's actions constitute misconduct is a mixed question of law and fact. <u>Tapper v. Emp't Sec. Dep't</u>, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993). We review questions of law de novo, giving substantial weight

8

to an agency's interpretation of the rules and statutes it administers. Everett Concrete Prods., Inc. v. Dep't of Lab. & Indus., 109 Wn.2d 819, 823, 748 P.2d 1112 (1988). We review findings of fact for substantial evidence, which is evidence that would persuade a reasonable person of the truth of the matter. King County. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000). In reviewing whether the Commissioner's findings are supported by the sufficiency of the evidence, we review the entire record, not merely the exhibits offered by one of the parties. See Andrew v. King County, 21 Wn. App. 566, 575, 586 P.2d 509 (1978). We construe the evidence in favor of the party who prevailed in the administrative proceeding, in this case, the employer. Shimmick Constr. Co., Inc. v. Dep't of Lab. & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 192 (2020).

1

Englund asserts that the Commissioner's findings of misconduct were not supported by substantial evidence. She argues that the Commissioner's findings were based entirely on hearsay submitted by the District, and the evidence she submitted demonstrates that she did not commit misconduct. We disagree.

Pursuant to RCW 50.04.294(1)(a), an employee commits misconduct if he or she has engaged in "willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee." Subsection (2) of the statute lists some examples of actions that constitute "willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee," such as:

> (a) Insubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer;

9

. . . .
　　(f) Violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule.

RCW 50.04.294(2).  Misconduct does not include "good faith errors in judgment or discretion."  RCW 50.04.294(3)(c).

In her brief, Englund assigns error to findings of fact 1, 9, 10, 12, 15, 18, 24, and 25.  Her assignments of error are properly directed to the Commissioner's decision, rather than that of the ALJ.  However, all of these assignments of error lack merit.

Findings of fact 1[4] and 12[5] are merely summaries of documents that were entered as evidence.  Both findings accurately summarize the exhibits to which they pertain.  Englund submitted those exhibits herself and is precluded from

---

[4] Finding of fact 1 reads,

On February 10, 2022, the Employment Security Department (the Department) issued a written Determination Letter that denied the Claimant unemployment benefits beginning October 17, 2021, on the basis that the Claimant was discharged (or, fired) for misconduct. The Claimant is the Appellant in this matter and filed an appeal on February 28, 2022.

[5] Finding of fact 12 reads,

In a letter dated October 19, 2021, the Employer notified the Claimant that she was prohibited from reporting for work beginning October 19, 2021, and that she was being recommended for termination.  This was because the Claimant had not provided proof of COVID[-19] vaccination to the Employer by October 18, 2021, nor had she obtained a medical or religious exemption by October 18, 2021.  This letter also notified the Claimant that if she "should agree to become fully vaccinated by November 19, 2021, the District would be willing to work with [the Claimant] to create a plan that would maintain [the Claimant's] position with the District." (Alterations in original.)

challenging them on appeal.  See e.g. Shanlian v. Faulk, 68 Wn. App. 320, 329, 843 P.2d 535 (1992) (party cannot object to evidence she submitted).

Findings of fact 24[6] and 25[7] are both credibility findings.  We do not review a fact finder's determinations of credibility.  Affordable Cabs, Inc. v. Dep't of Emp't Sec., 124 Wn. App. 361, 367, 101 P.3d 440 (2004).

The remaining findings of fact, 9, 10, 15, and 18, all concern the willfulness of Englund's failure to adhere to employer policy.  These read as follows:

> The Claimant did not provide proof of COVID[-19] vaccination to the Employer by October 18, 2021.  In addition, the Claimant did not follow the process to request a medical or religious exemption by October 18, 2021.  The Claimant had not obtained a medical or religious exemption by October 18, 2021.

Finding of fact 9.

> The Claimant could have filed a religious or medical exemption by October 18, 2021, but chose not to do so.

Finding of fact 10.

> The Claimant chose not to comply with the vaccination requirements. The Claimant chose not to comply with the vaccination requirements agreed to by her union as a condition of continued employment.

Finding of fact 15.

---

[6] Finding of fact 24 reads, "The Claimant and her representative appeared to conflate several concepts, particularly in relation to letters and other communications from the Department."

[7] Finding of fact 25 reads,

> Some of the Claimant's testimony appeared to conflict with, and was logically inconsistent with, documents she provided and that were admitted into the record for this hearing.  These include, but are not limited to, contemporaneous records between the Claimant and the Employer as well as the MOU between the Claimant's union and the Employer regarding COVID[-19] vaccine requirements.

The Claimant chose not to file a medical or religious exemption before the job separation occurred.

Finding of fact 18.

These findings are supported by the nonhearsay evidence presented by Englund herself. Englund submitted e-mails that demonstrate the District notified Englund on multiple occasions that all employees were required to be vaccinated or to apply for a medical or religious exemption by October 19, 2021, or else their employment would be terminated. Englund also submitted the MOU between the District and the Service Employees International Union 925, which states that

An employee who has a sincerely held religious belief that prevents them from being vaccinated against COVID-19 may request an accommodation by notifying Human Resources. The employee must meet with Human resources or submit the form to actively initiate the process. The employee must provide all information reasonably needed to evaluate the request.

Rather than providing proof of vaccination or applying for an exemption as both her employer and union directed, Englund repeatedly accused the District of harassment and stated that she would not be sharing any information in response to "HR's vaccine survey." Englund testified at the hearing that she did not provide proof of COVID-19 vaccination to the District, nor did she file for any kind of exemption before she was terminated. Under the APA, hearsay is admissible. RCW 34.05.452(1). But a finding may not be based exclusively on evidence that would be inadmissible under the rules of evidence. RCW 34.05.461(4). Here, Englund presented nonhearsay evidence that supports the challenged findings. The Commissioner's findings that Englund chose not to comply with the vaccination requirement are supported by substantial evidence.

Englund nevertheless asserts that the District was aware of her religious objections and cites to an e-mail contained in the administrative record. This e-mail, drafted by the assistant principal at Woodridge Elementary, states that Englund "shared that she has no plans to get the vaccination nor has she applied for a religious exemption. She stated her feelings about the vaccine extend beyond religious beliefs, and she shared some personal opinions on mandated vaccines and infringement upon her rights, etc." However, this court does not re-weigh the evidence presented to ESD. Construing this e-mail in the light most favorable to the District as we must, this brief allusion to religion did not put the District on notice that Englund intended to claim a religious exemption. More importantly, this e-mail does not demonstrate that Englund ever submitted a written request for a religious exemption, which her employer policy, union agreement, and state law all required her to do. Englund thus fails to satisfy her burden to show that the Commissioner's findings of fact were not supported by sufficient evidence.

2

Englund also assigns error to conclusions of law 16, 17, 18, and 19. Those conclusions read as follows:

16. Here, the Employer discharged the Claimant for failure to comply with COVID-19 vaccination requirements. The COVID-19 vaccination requirements were a reasonable company rule. The Employer allowed sufficient time to comply before the adverse employment action occurred, and the requirements were reasonably connected to promoting a safe and productive workplace and educational environment. Further, the Claimant's union agreed to the vaccination requirements, and the MOU between the Claimant's union and the Employer recognized that "An executive order in the

13

state of Washington requires Employees to have a COVID[-19] vaccine as a condition of employment." See Exhibits 458-461.

17. The Claimant was aware of the COVID-19 vaccination requirements and chose not to comply with these requirements. The Cla[i]mant was also aware that failure to comply with these requirements would result in the Employer ending her employment. The Claimant chose not to comply with the vaccination requirements agreed to by her union as a condition of continued employment. The undersigned notes that if the Claimant was opposed to getting vaccinated, the Claimant could have filed a religious or medical exemption by October 18, 2021. However, the Claimant chose not to do so.

18. Therefore, the Claimant was discharged due to a willful or wanton disregard of the rights, title, and interests of the Employer or a fellow employee as defined in RCW 50.04.294(1)(a), and is subject to disqualification for misconduct pursuant to RCW 50.20.066(1).

19. Benefits will be denied for the period beginning October 17, 2021, and thereafter for ten calendar weeks and until the Claimant has obtained bona fide work in covered employment and earned wages in that employment equal to ten times her weekly benefit amount.

Englund was notified about the vaccination policy two months before the final deadline of October 18, 2021. Finding of fact 6. She did not provide proof of COVID-19 vaccination by October 18, 2021, nor did she apply for an exemption, even though she had the opportunity to. Findings of fact 9-10, 13, 15. The District terminated Englund's employment as of October 18, 2021, due to her failure to adhere to the mandatory vaccination policy. Finding of fact 14.

As outlined above, the Commissioner's findings of fact were all supported by substantial evidence. Those findings demonstrate that Englund violated an employer rule of which Englund was aware. As such, the Commissioner's conclusion that Englund was discharged due to willful or wanton disregard of the rights, title, and interests of the employer and therefore disqualified from receiving unemployment benefits was supported by the evidence.

14

Englund nevertheless asserts that the vaccination policy was not a reasonable rule and she could not have committed misconduct by violating it.[8] This argument is meritless. The District's vaccination policy was mandated by the governor's proclamation and agreed to by Englund's union. It was therefore reasonable. See WAC 192-150-210(4) ("A company rule is reasonable if it is related to your job duties, is a normal business requirement or practice for your occupation or industry, or is required by law or regulation.") (emphasis added).

3

Englund also asserts that the Commissioner's decision was arbitrary and capricious. An administrative decision is arbitrary and capricious if it is " 'willful and unreasoning and taken without regard to the attending facts or circumstances.' " Kenmore MHP LLC v. City of Kenmore, 1 Wn.3d 513, 521, 528 P.3d 815 (2023) (quoting Whidbey Envt'l Action Network v. Growth Mgmt. Hr'gs Bd., 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020)). Englund contends that the Commissioner violated this standard when it denied her benefits "in contrast to long standing case precedence of similarly situated claimants with sincerely held religious beliefs and moral convictions."

Even if the ESD has any "long standing precedent" that would apply in this matter (a proposition for which Englund presents neither evidence nor authority), this argument necessarily fails because Englund never articulated any religious

---

[8] Englund also asserts that she had "good cause" to violate the policy and is entitled to benefits under RCW 50.20.050(2)(b)(x) and WAC 192-150-140(2)(b). This statute and corresponding administrative rule concern employees who leave their employment voluntarily. Because Englund's employment was terminated, neither applies to her.

objection to the vaccination requirement during her period of employment with the District. According to the employer, had Englund actually requested an exemption, her employment likely would not have been terminated. But Englund did not inform the District that she had a sincere religious objection to vaccination until well after her final day of employment. It follows that at the time of the termination for which Englund's eligibility for benefits is under review, she was in violation of a reasonable employer rule. The Commissioner's decision was not arbitrary and capricious.

D

Beyond these assignments of error, Englund's briefing presents arguments beyond the scope of any issues before the ESD (such as whether her employer breached a contract with her or engaged in improper acts in the months after the separation date at issue, October 19, 2021), and arguments directed to constitutional and other statutory considerations (such as Englund's "right to religious freedom protected by the First Amendment" and her "due process rights" protected by the "Fifth Amendment"). We have reviewed Englund's additional arguments, but she fails to support them with competent legal authority, or in many cases with any legal authority. This court does not address arguments inadequately supported with legal authority and except as discussed in this opinion, we decline to reach Englund's unsupported arguments.

IV

The Commissioner's findings of fact are supported by substantial evidence in the record and those findings support the conclusions of law. Englund fails to

demonstrate that the Commissioner's decision was incorrect in any way. We affirm the order denying Englund unemployment benefits.

Birk, J.

WE CONCUR:

Coburn, J.

Hazelrigg, A.C.J.